**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Stephen F. Chrabaszcz, Jr., et al

v. C.A. No. 03-133 S

Johnston School Committee, both
Individually and as Committee Members, et al.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants Johnston School Committee, both individually and as Committee Members, David J. Santilli, Robert LaFazia, Geraldine Loffredo, Richard Delfino, Robin Carlone, Peter Voccio, Jr., the City of Johnston, by and through its Treasurer/Director of Finance, Leo Fox, Michael Jolin, individually and officially as Superintendent of the Johnston School Committee, and Patricia Pitocchi, individually and officially as Principal of Johnston High School, and hereby move for the entry of summary judgment. In support thereof, defendants rely upon the Memorandum of Law, attached and incorporated herein.

Defendants,
By their Attorneys,

Marc DeSisto, Esq. (#2757)
Kathleen M. Daniels, Esq. (#4766)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Stephen F. Chrabaszcz, Jr., et al

v. C.A. No. 03-133 S

Johnston School Committee, both
Individually and as Committee Members, et al.

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff, Stephen Chrabaszcz, along with his wife and children, have brought a multi-count Complaint against the Johnston School Committee, the individual members of the School Committee, Dr. Michael Jolin, the former Superintendent of Schools and Patricia Pitocchi, principal of Johnston High School, challenging the decision in April of 2000 to place plaintiff on administrative leave with pay pending an investigation into certain actions by the plaintiff. As more fully outlined herein, defendants submit that the undisputed facts fail to support, as a matter of law, plaintiffs' various claims. Summary judgment on all counts should accordingly enter in favor of defendants.

## II. BACKGROUND FACTS

Plaintiff was hired by the Johnston School Committee on August 30, 1999, as the Johnston High School Vice Principal for the period of August 30, 1999-June 30, 2000. During the 1999–2000 school year, defendants received several complaints about plaintiff concerning both his ability to perform the job functions assigned and specific incidents of misconduct. On April 12, 2000, Dr. Jolin informed plaintiff that he was being placed on administrative leave with pay pending an investigation into several incidents of misconduct. In particular, the defendants initiated an investigation regarding: 1. plaintiff inappropriately touching a female student on the

lower back and calling her "babe" as he confirmed she would be in detention that day; 2. grabbing a male student by the shirt and kneeing him in the thigh; and 3. failing to investigate a report of sexual harassment by a female student against a male student. *Exhibit A.* The defendants did not release any information regarding plaintiff's administrative leave to the public. After a period of time, plaintiff decided to advise the public and school community about being involuntarily placed on administrative leave and the articulated reasons for the defendants' actions. *See School Committee Meeting Minutes, June 20, 2000, at 4 (Exhibit B).*

In consultation with City attorneys and the Town's insurance carrier, the R.I. Interlocal Trust, defendants hired an outside counsel, now R.I. Supreme Court Justice Francis X. Flaherty, to investigate the allegation that plaintiff had failed to investigate a sexual harassment complaint allegedly lodged by a female student against a male student. On June 26, 2000, Justice Flaherty forwarded correspondence to Dr. Jolin and informed him that despite numerous attempts he had not been able to contact the complaining student or her parents to follow-up on the allegations against plaintiff. Justice Flaherty thus decided to close out the investigation because of the failure of the complaining student to cooperate. *Exhibit C.*

Classes ended sometime around the second week of June, 2000. On June 6, 2000, Dr. Jolin informed plaintiff that he would recommending to the School Committee that they not renew plaintiff's contract which expired on June 30, 2000. Dr. Jolin expressly advised plaintiff that the reason for his recommendation was Dr. Jolin's conclusion that there were better administrators available to perform his duties. *Exhibit D.* After a public hearing, the School Committee accepted Dr. Jolin's recommendation that there were better administrators available and thus decided not to renew plaintiff's contract for the school year 2000-2001. Plaintiff took an appeal from this decision to the Commissioner of Education who affirmed the decision of the

Johnston School Committee. Plaintiff's appeal from the Commissioner's decision is pending before the Superior Court. The decision not to renew plaintiff's contract is not at issue in the instant suit. Rather, plaintiff filed the instant complaint alleging that the decision to place plaintiff on administrative leave with pay violated plaintiff's federal and state rights.

## III. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* Although this Court must view the evidence in the light most favorable to the nonmoving party, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleadings, but . . . must set forth the specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P. 56(e).* "A fact is 'material' if it potentially could affect the suit's outcome. An issue concerning such a fact is 'genuine' if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes-Iriszarry v. Corporacion Insular DeSeguros, 111 F.3d 184, 187 (1st Cir. 1997).* Accordingly, the purpose of summary judgment is to permit the court "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required" on the claims being examined. *Wynne v. Tufts Univ. School of Medicine, 976 F.2d 791, 793-94 (1st Cir. 1992) cert. denied 113 S.Ct. 1845 (1993).* The mandates of Rule 56(c) require entry of summary judgment "upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).*

## IV. PROCEDURAL DUE PROCESS

Defendants first submit that they are entitled to summary judgment on plaintiff's procedural due process claim. Of course, "the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972).* As more fully outlined below, plaintiff's claimed deprivation in the instant case simply does not amount to protected interest under the Procedural Due Process clause. Accordingly, summary judgment on Count I should enter in favor of defendants.

### *A. No Constitutionally Protected Property Right*

In Count I plaintiff specifically alleges that his "property" right as contained in his Employment Agreement has been infringed by the defendants' actions. *Plaintiffs' Complaint, at ¶ 39 & 53.* As noted by the Supreme Court, while the procedural due process clause protects property interests, "the range of interests protected by procedural due process is not infinite." *Roth, 408 U.S. at 569.* In the instant case, plaintiff was placed on administrative leave with pay beginning in April, 2000. However, the cases are clear that "any constitutionally protected interest [an employee has] as a result of his employment contract is satisfied by payment of the full compensation due under the contract." *Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1141 (4th Cir., 1990). See also Fields v. Durham, 909 F.2d 94, 98 (4th Cir. 1990) (holding that "no deprivation exists so long as the employee receives 'payment of the full compensation due under the contract'").* Accordingly, placing plaintiff on administrative leave with pay does not raise due process concerns because plaintiff has been afforded his full compensation under the contract. *Cf. Hicks v. Watonga, 942 F.2d 737, 746 n. 4 (10th Cir., 1991) citing Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 544-45 (1985) (suggesting that*

*suspension with pay may not raise due process concerns);* Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kansas, *869 F.2d 555, 556 (10th Cir. 1989) (suspension of public employee with pay does not infringe any measurable property interest).*

This result was reached by the Federal District Court for the District of Puerto Rico in Torres Santiago v. Fajardo, *70 F. Supp. 2d 72 (D.P.R., 1999).* In that case, plaintiff, a tenured teacher, was placed on leave with pay pending an investigation into a claim of misconduct. The suspension lasted two (2) months during which the plaintiff continued to receive her salary uninterrupted. Id. *at 75.* The District Court held that this short-lived suspension during which plaintiff continued to receive the compensation due to her under the contract did not give rise to a constitutionally protected property interest. Id. See generally Bennett v. City of Boston, *869 F.2d 19 (1st Cir. 1989).*

Likewise, in the instant case, plaintiff is complaining that a two-month administrative leave with pay pending an investigation violates plaintiff's protected property interest.[1] In light of the well-settled case law, defendants submit that such administrative leave with pay does not impinge upon any constitutionally protected property interest. Summary judgment in favor of defendants should accordingly enter.

*B. No Deprivation of a Constitutionally Protected Liberty Interest*

Although in his Complaint, plaintiff specifically identifies the alleged deprivation of his "property" interest, plaintiff makes a reference to "his right to be free from taint in his reputation, etc." *Plaintiff's Complaint, at ¶ 53.* To the extent that this provision seeks to maintain a deprivation of a liberty interest, defendants submit that it likewise must fail. First, it is well settled that the Fourteenth Amendment "liberty" interest does not grant protection to reputation

alone. Paul v. Davis, *424 U.S. 693, 701 (1976).* Rather, the Fourteenth Amendment protects reputation "only where (1) government action threatens it, (2) with unusually serious harm, (3) as evidenced by the fact that employment (or some other right or status) is affected." *Silva v. Worden, 130 F.3d 26, 32 (1st Cir. 1997).* To "'constitute a deprivation of liberty based on serious damage to one's standing in the community, more must be shown than mere allegations of incompetence or inefficiency at a particular job.'" Id. *at 33.* Moreover, the governmental agency itself also must be the one responsible for the dissemination of defamatory charges, "in a formal setting (and not merely as the result of unauthorized "leaks")." Id. See also Beitzell v. Jeffrey, *643 F.2d 870, 879 (1st. Cir. 1981).* In addition to presenting evidence of defamatory or false information, plaintiff must also demonstrate that the actions occurred "in the course of the termination of employment." *Hawkins v. R.I. Lottery Commission, 238 F.3d 112, 115 (1st Cir. 2001) quoting* Paul, *424 U.S. at 710.*

The undisputed facts in the instant case fail to meet this standard. First, of the three (3) complaints lodged against plaintiff, plaintiff subsequently admitted to the accuracy of two (2) of them. *Exhibit B at 3-4.* The remaining allegation, that he failed to investigate a charge of sexual harassment by a female student, speaks to a claim of incompetence or unsatisfactory job performance rather than the requisite allegation of immorality or dishonesty. Roth, *408 U.S. at 573.* In addition, the undisputed facts reveal that the defendants did not publicly disseminate the charges against plaintiff. Rather, it was plaintiff himself who decided to make the basis for his administrative leave publicly known. *Exhibit B, at 4.* Finally, the charges plaintiff claims resulted in damage to his reputation did not "occur in the course of the termination of employment." Paul, *424 U.S. at 710.* Rather, as made abundantly clear in Dr. Jolin's initial

---

[1] As noted, although the School Committee eventually decided not to renew his contract, the instant Complaint is not a challenge to the ultimate decision in this case not to renew his contract. In fact, plaintiff is exercising his due

letter to plaintiff informing him of his decision not to recommend renewal of the contract, *Exhibit D,* as well as during the hearing before the School Committee, *Exhibit B*, the decision not to renew was based on the conclusion that there were better administrators available.

Defendants thus submit that to the extent plaintiff seeks to maintain a claim for deprivation of a "liberty" interest, summary judgment in favor of defendants should enter because plaintiff has failed to identify such a constitutionally protected interest.[2]

## V. SUBSTANTIVE DUE PROCESS CLAUSE

In Count II plaintiffs also maintain that the defendants' actions amounted to a violation of plaintiff's substantive due process right. Contrary to a procedural due claim which focuses on the procedural protections afforded to a deprivation, "a substantive due process claim implicates the essences of state action rather than it modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible."' *Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) cert. denied, 498 U.S. 936.* In asserting a protected interest under the Substantive Due Process clause, plaintiff cannot rely on procedural due process jurisprudence. *Santiago de Castro v. Morales-Medina, 943 F.2d 129, 131 (1st Cir. 1991).* This is because "substantive due process rights are created only by the Constitution." *Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 229 (1985) (Powell, J. concurring).*

---

process rights to challenge that decision by his pursuit of an appeal currently pending before the R.I. Superior Court.

[2] As raised by this Court, *Molloy v. Blanchard, 907 F. Supp. 46 (DRI 1995) aff'd on other grounds, 115 F.3d 86 (1st Cir. 1997)* is distinguishable from the instant case. In the first instance, the plaintiff in *Molloy*, a police officer, had been denied the added right to obtain detail work during her paid leave. Secondly, unlike the instant case, Molloy's status had been publicly disclosed.

While there are essentially two approaches to substantive due process claims,[3] Pittsley v. Warish, *927 F.2d 3, 6 (1st Cir. 1991), cert. denied, 502 U.S. 879 (1991)*, deprivations of "identifiable liberty or property interests" actionable under the substantive modality of the due process clause "generally have something to do with 'matters relating to marriage, family, procreation, and the right to bodily integrity' rather than property or employment issues." Ramirez v. Arlequin, *2005 U.S. Dist. LEXIS 3380, 30-31 (D.P.R., 2005).* Michael H. v. Gerald D., *491 U.S. 110, 122 (1989)(substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental'").* See i.e. Harrington v. Almy, *977 F.2d 37, 43 (1st Cir., 1992) ("substantive due process analysis [has] focused on state action undertaking unwanted manipulations of an individual's body");* Rochin v. California, *342 U.S. 165, 172 (1952) (holding that pumping a criinal defendant's stomach shocked the conscience;* Cruz-Erazo, *212 F.3d at 623 (holding that verbal harassment by police officers did not shock the conscience because it was not physically intrusive or violent, nor did it strike at any protected relationship, such as between a parent and child);* Souza v. Pina, *53 F.3d 423, 427 (1st Cir. 1995 (holding that prosecutor's statements to media linking the plaintiff to the murder of nine women did not shock the conscience).* Justice Scalia was especially critical of the reliance upon substantive due process protections for non-fundamental constitutional rights: "It would be absurd to think that all "arbitrary and capricious" government action violates substantive due process . . . . The judicially created substantive component of the Due Process Clause protects, we have said, certain "fundamental liberty interests" from deprivation by the government, unless the infringement is narrowly tailored to serve a compelling state interest."

---

[3] "Under the first approach ("conscience-shocking acts"), plaintiff can allege a violation to substantive due process without having to show the violation of a specific liberty or property interest, but only if the state's conduct is "conscience shocking." With respect to the second approach ("arbitrary and capricious acts"), plaintiff must

City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., *538 U.S. 188, 200 (2003) (Scalia, J. concurring).*

Consequently, plaintiff's claimed deprivation of being placed on administrative leave with pay simply does not amount to a matter "relating to marriage, family, procreation, and the right to bodily integrity." Ramirez, *2005 U.S. Dist. LEXIS 3380 at 30-31.* See also Putnam v. Keller, *332 F.3d 541, 548 (8th Cir., 2003) (accusing part-time music teacher of misappropriation of funds and banning him from campus not liberty interest protected by the substantive due process clause).* Accordingly, plaintiffs' claim under the substantive due process clause must fail.

## VI. QUALIFIED IMMUNITY

Defendants alternatively submit that even if the Court were to determine that summary judgment on the merits of plaintiff's due process claims is not appropriate, defendants are nevertheless entitled to summary judgment because they are qualified immune from such claims. Berthiaume v. Caron, *142 F.3d 12, 15 (1st Cir. 1998) ("[q]ualified immunity may exist even though in hindsight a court might determine that the action of the official violated the constitution").*

The doctrine of qualified immunity emanates from the Supreme Court's pronouncements in *Harlow* where the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald 457 U.S. 800, 818 (1982).* In assessing whether to grant defendants qualified immunity, the First Circuit Court of Appeals has outlined "a three-part

demonstrate a violation of an identified liberty or property interest protected by the due process clause." Pandolfi de Rinaldis v. Varela Llavona, *62 F. Supp. 2d 426, 433 (D.P.R., 1999) citations omitted.*

algorithm." Savard v. R.I., *338 F.3d 23, 27 (1st Cir. 2003) citations omitted.* As a threshold matter, the Court must determine if the plaintiffs have established a constitutional violation. "The second question deals with fair warning; it asks whether the law was clearly established at the time of the constitutional violation. The final question is whether a reasonable official, situated similarly to the defendant(s), would have understood that the conduct at issue contravened the clearly established law." *Id.*

In the instant case, as more fully outlined above, defendants submit that plaintiff has failed in the first instance to demonstrate the violation of constitutionally protected right. As noted *infra*, plaintiff cannot establish a protected property or liberty interest under either procedural or substantive due process guarantees stemming from being placed on administrative leave with pay. Not only was plaintiff granted everything he was entitled to under the contract by full payment, defendants did not publicly disclose the fact that he was placed on administrative leave in violation of any protected liberty interests. *See Townsend v. Vallas, 256 F.3d 661, 675 (7th Cir., 2001) (Granting qualified immunity where teacher failed to establish violation of constitutional due process right as a result of removal with pay from his teaching position for two (2) month period, pending an investigation).*

In addition, even if the Court were to conclude that plaintiff has established such a constitutional violation, the case law outined *infra* makes clear that such a right was not clearly established such that defendants would be aware that the actions taken would deprive plaintiff of constitutional right. *See i.e. Schneeweis v. Jacobs, 1992 U.S. App. LEXIS 15623 (4th Cir., 1992) citing Siegert v. Gilley, 500 U.S. 226, 288 (1991) (Defendants entitled to qualified immunity from basketball coach's due process claims because coach, suspended with pay from coaching duties*

*pending investigation into complaints, did not possess clearly established property interest or liberty interest).*

Moreover, even if the Court were to reach the final question of whether a reasonable official, situated similarly to the defendant(s), would have understood that the conduct at issue contravened the clearly established law, defendants submit the answer is simply no. In addition to the reasons outlined above regarding the questionable status of plaintiff's alleged constitutional right, the severity of the uncontested acts of plaintiff, including calling students "babe" as a term of endearment and engaging in physical horseplay with male students, raises sufficient basis for the defendants to believe that placing him on paid leave would not infringe upon a constitutional right. As pointed out by the First Circuit, in assessing a defendant's entitlement to qualified immunity, the Court "must balance the need to vindicate constitutional rights against the need to insulate public officials from civil litigation that might unduly inhibit the assiduous discharge of their duties." *Savard, 338 F.3d at 27.* The First Circuit has also observed that the "qualified immunity standard 'gives ample room for mistaken judgments' by protecting' all but the plainly incompetent or those who knowingly violate the law.'" *Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992) quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991).* A "reasonable, although mistaken, conclusion about the lawfulness of one's conduct does not subject a government official to personal liability." *Cookish v. Powell, 945 F.2d 441, 443 (1st Cir. 1991).* In the instant case, even if the Court were to eventually determine that the decision to place plaintiff on administrative leave with pay pending an investigation, reached in careful consultation with both School Committee attorneys and the Trust, were mistaken, defendant is nevertheless entitled to qualified immunity. Thus, summary judgment on plaintiff's due process claims, Count I and II, should enter because the individual defendants are entitled to qualified

immunity from the constitutional claims.

## VII. BREACH OF CONTRACT

In Count IV[4] plaintiff alleges that the defendants breached the Employment Agreement. Plaintiff specifically points to the alleged failure of the defendants to prepare an evaluation of the plaintiff as the basis for the alleged breach. Defendants submit that the undisputed evidence fail to support plaintiff's breach of contract claim.

In the first instance, a plain reading of the Employment Agreement reveals that the defendants did not breach the Agreement by failing to provide plaintiff with an evaluation. This becomes evident when the Agreement is read in its entirety. First, pursuant to paragraphs III of Employment Agreement, plaintiff is required to submit a self-evaluation of performance, professional growth, and goal accomplishment. *See Exhibit E.* This self-evaluation must identify "one or more goals to be accomplished each school year." *Id. at ¶ III.* Paragraph VII meanwhile requires plaintiff to submit a written summary and self-evaluation of his compliance with his personal professional grown plan for that year. *Id. at ¶ VII.*

The section plaintiff alleges to have breached by the defendants, paragraph XIII, meanwhile specifically relies upon plaintiff's compliance with these self-evaluation and professional growth plans for completion. In particular, paragraph XIII states that an annual evaluation shall be completed based minimally on *inter alia* "the annual school and individual improvement goals" and "professional growth." *Id. at ¶ XIII.* In the instant case, plaintiff concedes that he never prepared a professional growth plan or self-evaluation. *Plaintiff's Deposition, at 50.* Consequently, because defendants must base the evaluation in part on these items, defendants cannot be found to have violated the Agreement provisions when plaintiff

[4] Plaintiffs' Complaint does not contain a "Count III."

failed to comply with his obligations and provide the necessary professional growth and improvement goals.

In any event, pursuant to paragraph XIII, generally such evaluations "shall be completed between May and August." *Employment Agreement, at ¶ XIII.* In this case, plaintiff had been placed on administrative leave in April, prior the date called for the completion of the evaluation. Consequently, for all these reasons, defendants submit that summary judgment on plaintiff's breach of contract claim should enter in favor of defendants.

## VIII. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

In Count V, plaintiff alleges defendants intentionally interfered with his employment contract with the School Committee. Under R.I. law, the elements of this tort include (1) the existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff. *Mesolella v. City of Providence, 508 A.2d 661, 669 (R.I. 1986)*. Malice, in the sense of spite or ill will, is not required; rather legal malice--an intent to do harm without justification--will suffice. *Id.* "To prevail, then, the plaintiff must prove that ultimately, the defendant acted 'without justification' or for an 'improper purpose.'" *UST Corp. v. General Road Trucking Corp., 783 A.2d 931, 937 (R.I. 2001).*[5]

The initial question to be determined in the instant case is whether a claim may be brought against defendants for tortious interference with their own contract. "It is usually said that tort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under a contract with another person * * * ." *Jolicoeur Furniture Co.,*

[5] The Restatement (Second) Torts § 767 (1979) lists seven factors that may be considered in determining the appropriateness of interference, namely, "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the

Inc. v. Baldelli, *653 A.2d 740, 752 (R.I. 1995) (emphasis added)*. Therefore, the question here, as it was in Jolicoeur, is whether defendants are the same party as that holding the contract with plaintiff. Of course, in the first instance, there can be no dispute that the individual School Committee members are the same party as the School Committee, the entity that entered the contract with plaintiff. The question then becomes whether Dr. Jolin also qualifies as the same party. [6] In Jolicoeur, the court determined that the mayor and the planning director were not the same party as "the City" because the governing structure of the City established separate branches of city government. "[I]t is not inconceivable that the separate branches would be independent enough to act in opposition to one another in a number of ways." Id.

The instant case is different and the undisputed facts clearly establish that the Superintendent is the same party as the School Committee, the entity that entered the contract with plaintiff. Pursuant to the provisions of the Home Rule Charter, although the School Committee has the authority to appoint and remove all school employees, such authority may only be accomplished upon the recommendation of the Superintendent. Johnston Home Rule Charter, § 15-3(4). Moreover, the Charter expressly requires the School Committee to "deal with the administration of the public schools solely through the superintendent of schools." Id. "All details of administration shall be handled by the superintendent or other administrative officers to whom he delegates the work." Id. Unlike Jolicoeur where the executive branch was accused of interfering with a contract authorized by the legislative branch, plaintiff complains about the actions of the School Committee itself by and through their legal agent, the

---

social interests protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." Id.

[6] Although plaintiff also names Principal Patrici Pitocchi, there is no evidence to support the conclusion that she had any authority or took any action regarding plaintiff being placed on administrative leave or otherwise interfered with plaintiff's contractual rights. Rather, according to plaintiff, his complaints about Principal Pitocchi relate to her failure to include him in activities and her enforcement of plaintiff being placed on administrative leave with pay. Deposition of Plaintiff, *May 18, 2005, at 65-66.*

Superintendent. Therefore, the Superintendent and the School Committee are the same party precluding defendants' liability for tortious interference with Plaintiff's contractual relations.

Furthermore, there is no evidence to conclude that defendants acted with legal malice. There are no allegations of personal animosity in the employment decision or that defendants were out to get plaintiff. Rather, as set forth above, plaintiff admitted that he routinely used the term "babe" with students and engaged in physical horseplay with students such as that formed part of the basis for the complaint against him. The defendants therefore had more than ample justification to restrict plaintiff's contact with the student body pending its investigation. As such plaintiff cannot establish that defendants possessed legal malice, an intent to do harm "'without justification' or for an 'improper purpose.'" UST Corp., *783 A.2d at 937*. Plaintiffs' claim for intentional interference with contractual relations therefore must likewise fail.

## IX. Intentional Infliction Of Emotional Distress

In recognizing the tort of intentional infliction of emotional distress, the Rhode Island Supreme Court has generally followed the Restatement (Second) on Torts. Curtis v. State DCYF, *522 A.2d 203, 208 (R.I. 1987)*; Champlin v. Washington Trust Co., *478 A.2d 985, 989 (R.I. 1984)*. Thus, under Rhode Island law, in order to maintain an action for intentional infliction of emotional harm:

> the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe. Champlin, *478 A.2d at 989.*

In addition, in order to maintain a claim for the intentional infliction of emotional distress, the plaintiff must also provide at least some proof of medically established physical symptomatology. Curtis, *522 A.2d at 208*. In the instant case, defendants submit that summary

judgment should enter because plaintiffs have failed to demonstrate that the defendants' actions amounted to extreme and outrageous conduct such to justify recovery.

The issue of whether conduct is sufficiently "extreme and outrageous" to satisfy this standard, in the first instance, is one of law for the Court. Fudge v. Penthouse International, Ltd., *840 F.2d 1012, 1021, cert. denied, 488 U.S. 821 (1988).* The Second Restatement explains that:

> "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Restatement (Second) of Torts (1965), § 46, at comment (h).*

The Restatement has further provided guidance by cautioning that "it [is] not . . . enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Id., *§ 46, comment (d).* Courts therefore have rejected the notion that intentional or reckless conduct that causes severe emotional distress *ipso facto* constitutes extreme and outrageous conduct. Fudge, *840 F.2d at 1021.* Rather, in order to meet the "extreme and outrageous" standard, a plaintiff must demonstrate that the defendant's conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Restatement (Second) of Torts (1965), § 46, comment (d).* See also Swerdlick v. Koch, *721 A.2d 849, 863 (R.I. 1998).*

Consistent with the Restatement, Courts have required that the adverse employment decision be "atrocious, and utteriy intolerable in a civilized community." Id.; Swerdlick, *721*

*A.2d at 863.* One court has explained that the standard requires either "a pattern of conduct that . . . has intended to cause or recklessly did cause severe emotional distress" or "a single, isolated activity" wherein a "public or quasi-public official has severely abused his discretion or a private individual has blatantly and severely harassed another." *Rawson v. Sears Roebuck & Company, 530 F.Supp. 776, 780 (D.Co. 1982) (employer's decision to discharge plaintiff, even made for impermissible purpose such as age discrimination, did not give rise to intentional infliction of emotional distress).*

Defendants submit that as a matter of law, placing plaintiff on administrative leave with pay pending an investigation, even if that investigation was not resolved before plaintiff's contract with the defendants expired, simply does not amount to the "extreme and outrageous" conduct for which defendants should be held liable. *See e.g. Martin v. Citibank, N.A., 762 F.2d 212, 220 (2nd Cir. 1985) (employer's conduct in requiring employee to undergo polygraph examination did not rise to the level of "extreme" or "outrageous"); Peterson v. First Federal Saving & Loan Ass'n of P.R., 617 F.Supp. 1039, 1042 (D.Va. 1985) (bank's decision to discharge 15 year at-will bank employee after the employee complained that branch was in need of certain improvements did not amount to extreme and outrageous conduct).* Summary judgment on count VI should accordingly enter in favor of defendants.

**X. NEGLIGENCE**

Plaintiff has also brought a claim entitled "negligence" premised upon the defendants' breach of their duty outlined in the Employment Agreement with plaintiff. *Plaintiffs' Complaint, Count VIII.* Defendants submit that such a claim is essentially a breach of contract claim and thus, for the reasons outlined above, section VII, judgment in favor of defendants should enter.

## XI. DEFAMATION

In Count IX, plaintiff finally seeks to maintain a claim for defamation based on the alleged defamatory comments by defendants to prospective employers. *Plaintiffs' Complaint, ¶ 91.* It is well-settled under Rhode Island law that an action for defamation requires proof of: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) damages, unless the statement is actionable irrespective of special harm." Healey v. New England Newspapers, Inc., *555 A.2d 321 (R.I. 1989).* A "defamatory" statement has been defined as false and malicious words "which tend to degrade [a party] in society or bring him into public hatred and contempt." Elias v. Youngken, *493 A.2d 158, 161 (R.I. 1985).*

Defendants submit in the first instance that summary judgment on plaintiff's defamation claim should enter because there is absolutely no evidence that defendants made a false and defamatory comment to a prospective employer about plaintiff. Rather, according to plaintiff, he based his belief that such a statement was made (without identifying exactly what the false statement was) on the fact that he could not get a job for over a year after leaving Johnston's employment. Defendants submit that this is simply insufficient to proceed to trial on a claim for defamation.

Defendants further submit that even if plaintiff had been able to identify a defamatory statement, defendants are nevertheless entitled to a qualified privilege that protects them from the instant defamation claim. Under Rhode Island law a qualified privilege attaches to situations where, as a matter of public policy or otherwise, individuals have a duty and/or an obligation to speak out regarding the conduct or actions of another without being subject to absolute liability. Ponticelli v. Mine Safety Appliance Co., *247 A.2d 303, 305-306 (R.I. 1968).* The R.I. Supreme

Court has expressly found that such a privilege attaches to "communication by a former employer to a prospective employer with regard to a former employee's work characteristics." Swanson v. Speidel Corp., *110 R.I. 335, 340 (R.I. 1972).* In the instant case, plaintiff is clearly challenging alleged statements made by a former employer to prospective employers. As such, any such statements are entitled to this qualified privilege.

Once qualified privilege is granted, it raises the presumption that the statement was made for the common good. In order to defeat this presumption, plaintiff must establish that the statements were made not for the common good but out of malice. Express or actual malice rather than "malice-in-law" is required to overcome a claimed privilege. *Ponticelli, 247 A.2d at 308.* That is, plaintiff must establish that the actions were motivated by personal spite or ill will. *Id.* In support of their claim, the plaintiff cannot rely merely upon the defamatory statements themselves to create jury questions as to actual malice. If, on the facts the only reasonable conclusion that can be reached is that the ill will or spite, if indeed they existed, were merely incidental rather than the motivating factor, the issue is left for the court's determination. *Id.*

In the instant case, plaintiff's Complaint makes absolutely no allegation that defendants possessed either express or actual malice against plaintiff motivating them to make the alleged defamatory comments. Defendants thus submit that as a matter of law, defendants are entitled to qualified privilege for the alleged defamatory comments and summary judgment on Count IX should accordingly enter.[7]

---

[7] Count VI of plaintiffs' Complaint also seeks to recover on the part of plaintiff's wife and children based on a loss of consortium claim. Because("a cause of action for loss of consortium 'arises from' the injured spouse's injury and depends on the success of the underlying tort claim", judgment on the part of defendants on plaintiff's tort claims necessarily mandates judgment on Count VI. *Illas v. Przybyla, 850 A.2d 937, 943 (R.I., 2004).*

## XI. CONCLUSION

For the reasons cited herein, as well as those that may be raised at hearing, defendants respectfully request that summary judgment on all counts enter in favor of defendants.

Defendants,
By their Attorneys,

Marc DeSisto, Esq. (#2757)
Kathleen M. Daniels, Esq. (#4766)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that a true copy of the within was mailed, postage prepaid, on this 13th day of July, 2005, to the following:

Jeffrey D. Sowa, Esq. (#5764)
67 Cedar Street, Suite 102
Providence, RI 02903