**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| Stephen F. Chrabaszcz, Jr., et al | : | |
| | : | |
| vs. | : | C.A. No. 03-133S |
| | : | |
| Johnston School Committee, both | : | |
| Individually and as Committee Members, et al | : | |

**PLAINTIFF'S EXHIBITS IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Jeffrey D. Sowa, Esq./#5764
Christopher D. DiSano, Esq./#6788
LaPlante & Sowa, Ltd.
67 Cedar Street, Suite 102
Providence, RI 02903
TEL: (401) 273-0200
FAX: (401) 273-0250

## CONTENTS

**Exhibit 1** – Deposition of David Santilli
(Will supplement upon request)

**Exhibit 2** – Deposition of Michael Jolin, Volume I
(Will supplement upon request)

**Exhibit 3** – Correspondence of April 12, 2000

**Exhibit 4** – Deposition of Stephen F. Chrabaszcz
(Will supplement upon request)

**Exhibit 5** – Transcript, Commissioner of Education Proceedings, Volume I
(Will supplement upon request)

**Exhibit 6** – Deposition of Michael Jolin, Volume II
(Will supplement upon request)

**Exhibit 7** – Transcript, Commissioner of Education Proceedings, Volume II
(Will supplement upon request)

**Exhibit 8** – Johnston School Committee Meeting Minutes, June 20, 2000

**Exhibit 9** – Deposition of Manuel Vinhateiro
(Will supplement upon request)

**Exhibit 10** – Deposition of Deborah Buffi
(Will supplement upon request)

**Exhibit 11** – Transcript, Johnston School Committee
(Will supplement upon request)

**Exhibit 1**

Deposition of David Santilli
(Will supplement upon request)

# **Exhibit 2**

Deposition of Michael Jolin, Volume I
(Will supplement upon request

# Exhibit 3

**Correspondence of April 12, 2000**

*Johnston School Committee*

ROBIN CARLONE
*Chairwoman*
GERALDINE A. LOFFREDO
*Vice Chairwoman*
RICHARD J. DelFINO, JR.
DAVID SANTILLI
PETER VOCCIO, JR.

TOWN OF JOHNSTON, RI ★ INCORPORATED 1759 ★

MICHAEL W. JOLIN PH.D.
*Superintendent of Schools*

JOHNSTON PUBLIC SCHOOLS
ADMINISTRATION OFFICE
10 MEMORIAL AVENUE
JOHNSTON, RHODE ISLAND 02919-3222

April 12, 2000

Stephen F. Chrabaszcz, Jr.
8 Whittier Drive
Johnston, RI 02919

Dear Mr. Chrabaszcz:

Please be advised that effective immediately, you are hereby placed on administrative leave with pay from your position as Assistant Principal at Johnston High School pending my investigation of matters of a confidential nature regarding your professional conduct.

During the period of this leave you are not to enter Johnston High School and its surrounding properties. I do understand that you have a child in the school system and you may, of course, carry out your responsibilities relating to this fact.

Thank you in advance for your consideration.

Sincerely,

Michael W. Jolin

Michael W. Jolin, Ph.D.
Superintendent of Schools

MWJ/mdt

C:: School Committee
Stephen M. Robinson, Esquire

# **Exhibit 4**

Deposition of Stephen F. Chrabaszcz
(Will supplement upon request)

**Exhibit 5**

**Transcript, Commissioner of Education Proceedings, Volume I**
**(Will supplement upon request)**

# Exhibit 6

**Deposition of Michael Jolin, Volume II**
**(Will supplement upon request)**

# Exhibit 7

**Transcript, Commissioner of Education Proceedings, Volume II**
**(Will supplement upon request)**

# <u>Exhibit 8</u>

## Johnston School Committee Meeting Minutes, June 20, 2000

# JOHNSTON PUBLIC SCHOOLS
# JOHNSTON, RHODE ISLAND

Special Meeting
Tuesday, June 20, 2000

Ferri Middle School Library
7:00 P.M.

## MINUTES

A meeting of the Johnston School Committee was held on Tuesday, June 20, 2000 at 7:00 p.m. in the Johnston High School auditorium.

The meeting was called to order by Robin Carlone, Chairwoman at 7:10 p.m.

PRESENT:
Robin Carlone, Chairwoman
Geraldine Loffredo, Vice Chairwoman
Richard J. DelFino, Jr.
David Santilli
Peter Voccio, Jr.

Mrs. Carlone stated that this evenings meeting was based on the School Committee doing its business in public. Mr. Chrabaszcz received a letter on June 6, 2000 stating that the Superintendent was making a recommendation that his contract not be renewed. Mr. Chrabaszcz had two options, hold this meeting in executive session or public session and he chose the public session. It would have been inappropriate at this time to take public comments,

At that point the committee went on with the recommendation of the Superintendent. Attorney Denise Myers was also present .

Attorney Myers stated that there would be no discussion regarding the recommendation of Dr. Jolin, Superintendent. This was a matter, handled in normal fashion, regarding personnel. It was simply a matter where the Superintendent made a recommendation to the School Committee. It was not appropriate for public discussion.

A member of the audience asked the question, "who makes that decision that it was not appropriate to speak". We were told by School Committee members that we would be able to speak on behalf of Mr. Chrabaszcz.

Attorney Myers stated that there would be an opportunity for that at a subsequent hearing. The Superintendent makes a recommendation and the School Committee may accept or not accept that recommendation. At that point the employee of the school department has an opportunity to appeal the School Committee's decision. At that point the public is

invited to make any comments it wishes to make to address the School Committee's decision.

Mrs. Carlone stated that the committee would proceed with the recommendation of the Superintendent.

Dr. Jolin stated, for the record, that this was what is known as a pre-deprivation hearing, not a full hearing. There would be an opportunity to testify on behalf of Mr. Chrabaszcz at another time. You may have been misled. The purpose of this evening's meeting was for the Superintendent to inform the School Committee of a recommendation that he has to make as part of his job. The School Committee has to then either accept or reject that recommendation. Once the School Committee makes its decision, Mr. Chrabaszcz has a right to a full hearing where all the facts are presented and he has a right to call witnesses at that hearing. He then proceeded to make his recommendation. Mr. Chrabaszcz, for the record, has a contract with the Johnston School Department that expires on June 30, 2000. It was his responsibility to either recommend that the contract be extended or not renewed. His recommendation to the School Committee was that the contract not be renewed. The reasons for that recommendation were that Mr. Chrabaszcz has performed in a manner that he believed could be improved upon and that there are other administrators in the State of Rhode Island or anywhere else that we may recruit from, that can do a better job.

Mrs. Carlone cautioned the audience. She stated that any person who was disruptive would be asked to leave the meeting.

Dr. Jolin stated that he didn't want this forum to deteriorate into a discussion of Mr. Chrabaszcz' character or quality. He had a responsibility to say whether or not he could find better people to do the job, that is the standard that he has to judge by. The public may not like it but this was the recommendation that he was making to the School Committee this evening. He believed that if we conducted another search we would find a more qualified person for this job. It was his responsibility to provide excellence to this school system.

Mr. Voccio moved, seconded by Mrs. Carlone to approve the Superintendent's recommendation not to renew the contract of Stephen Chrabaszcz, Assistant Principal at Johnston High School that expires, June 30, 2000.

Discussion followed on this motion.

Mrs. Carlone stated that Mr. Chrabaszcz's attorney, Mr. Stephen Placella had requested to be heard at this point.

Attorney Placella stated that Mr. Chrabaszcz had a statement he wished to read.

Mr. Chrabaszcz addressed the School Committee. He stated that he was a Viet Nam veteran and after Viet Nam he went to Brown University where he received

his B.A. and his Masters Degree. He also received a second Masters Degree from Providence College.

Mr. Chrabaszcz read the following statement:

> "For twenty-four years I have gotten up each morning to go to work and do the thing that I do best, work with children. In the twenty-four years I have been very successful at this job. I attribute this to the fact that generally, the teachers like to work with me and the parents appreciate the job that I do. The shining light in my career has always been that the students love me, they know I care for them and that I am there for them. I felt that a dream had come true when I got this job in Johnston. I knew many of the children since they were six years old through instructional baseball. Manyof them are friends of my son, Stephen and daughter, Jess. I was excited about being in Johnston, close to home and my family. I was going to be in charge of discipline and living close to the school would be a plus. I would see students all over town; they would come up to me and say, hello. Some would even come to my house and ask to speak to me about some problem or issue. There have been some difficult moments but none related to the students. There is a great instability in the leadership in Johnston. There have been two Superintendents, three principals, and a new assistant principal. There was a new discipline policy that had to be followed. There was a problem at the beginning of the year with students in the academy concerning hats, which he had to correct. He was the one stable force, the person the parents and students could turn to for help and answers. I addressed some of these discipline problems and asked for an in house school for suspended students at a meeting of the School Committee. I asked that the internet be blocked so that students could not access certain sites. I tried to use my experience to bring about change. I was told to wait until the new Superintendent came on board so that we could make changes. I looked forward to his arrival and that of Mrs. Pitocchi so that we could work together. When they came I felt something was wrong. Dr. Jolin would never talk to me about my contract; he avoided the issue every time I approached him. The only time he mentioned my contract was when he said I was in trouble and this would hurt my chances to be rehired. The new principal acted in the same way. The day after I arrived she moved my office to the other side of the building while keeping the other vice principal near her. She immediately wrote me a letter of reprimand concerning the use of the word, "babe". I use the term, "babe" like other people use the words, dear or hon. I hear teachers and coaches use those terms all of the time. In my case no one ever said not to use this term. The first time I ever heard anything negative about me was when a letter of reprimand was

placed in my file. I never considered the term offensive and I didn't know anyone else did either. If someone had explained to me and made me aware, I would have stopped it but a letter in my file was my only conversation. As far as horsing around with the kids, again, I've always kidded with children, a slap on the back, a shot in the arm, the boys liked it, they would come up behind me and do the same to me. In many cases, they did this for the attention that they received from me. I recently heard a discussion about boys and the fact that they have very few people to talk to and relate to. As a parent I know how busy we can be and many boys spend more time at school than at home. They cannot talk about their problems to anyone. At Johnston, the boys had me and they used this process to get my attention and become friends with me. The final incident involved a fight at the school library which was clearly never my fault but it was an incident which was supposedly the most serious. The girl involved never told me the boy was bothering her. I have worked with sexual harassment cases many times before, I always take action. I was kept out of school for ten weeks, I could not attend the baseball games, the prom, senior activities, graduation, all the things I had worked for and looked forward to. The girl has since left school because of this. Had it been handled correctly, this problem would not have happened to her. My family has been hurt, my son, Stephen graduated from high school, my Jess graduated from 8th grade, my little Adam made his first communion. We celebrated all of these with a terrible cloud over our heads. We will always remember these times with bittersweet memories. At first I truly believed that this was going to be handled quickly as Dr. Jolin promised me. I even went along with the suggestion of the School Committee lawyer and say that I was sick. When my neighbors and the kids were coming up to us and saying, please tell me Mr. Chrabaszcz, does not have cancer, I knew I had to stop this. My wife and I made the decision to go public with this. When my son died, fourteen years ago, the parents and the people of Johnston had an overwhelming support and affection for me and we said then, that we would never leave this town, we love this town. I realize I have ruined my careen in education by this move. It is an unwritten rule among Superintendent's that they call each other when someone applies for a job in their system. I had another job lined up but I lost it last week because of this situation hanging over my head. Next week I will not have a paycheck, no benefits for my family including my son, Adam, who has down syndrome and I have incurred $7,000. In legal fees to defend myself over a harassment case which is truly untrue to save my job. Finally, I have opened up my life to public scrutiny but I did it so that the people in this town will know the truth. In September, I am sure that there will be an assistant principal on board, one that is more polished, quiet and part of the team. I can be sure of one thing however; he will never care for the children like I do. My friend, a priest at Bishop Hendricken, advised me to make it clear to everybody here that I made this session public. I did so to show my children that sometimes you must stand up for what it right even when doing so is very hard. I now ask the School Committee to do the same thing. Do what is right even when it is difficult. Show the children of this town that sometimes people must be made to put aside their differences for the overall good. Show the children in the town that you realize how much I have done for them and will continue to do so. Maybe together, Dr. Jolin, Mrs.

do the same thing. Do what is right even when it is difficult. Show the children of this town that sometimes people must be made to put aside their differences for the overall good. Show the children in the town that you realize how much I have done for them and will continue to do so. Maybe together, Dr. Jolin, Mrs. Pitocchi, Mr. Antonello and I can accomplish great things. I ask that the School Committee support neither, Dr. Jolin nor myself but have us work together for the children of Johnston. It is now your turn to do the right thing".

Mrs. Carlone thanked Mr. Chrabaszcz for his statement. She asked the committee members if they had any comments starting with Mr. DelFino.

Mr. DelFino had a procedural question. In all of the years he had been a member of the School Committee, he had never been asked to vote on a non renewal. He was somewhat concerned and questioned the legality of what was taking place this evening in arriving at this decision. If this committee saw fit not to accept this recommendation of the Superintendent, tell him what happens. If the Superintendent was the only one who can make an appointment and he had a contract that was expiring, tell me what the benefit was to either take this action or not take this action. He said that by us not taking any action, it doesn't resolve this issue for Mr. Chrabaszcz. He had a one year contract that expired in a couple of days but if you don't see fit to reappoint him then what action was before this committee. He suggested that procedurally a non renewal was not the appropriate action before this committee.

Attorney Myers stated that it was her understanding that this was a one year contract that could be renewed upon the recommendation of the Superintendent. Because the Superintendent determines he is not offering a new contract because in his letter he believes there are better administrators available to perform the job. He has made a decision not to renew it. The bottom line was that it was a procedural right that the vice principal had under Laudermill, to allow all of us to understand his same question. It is a very narrow issue that the School Committee has.

Mr. DelFino stated that we have established that in fact, is Mr. Chrabaszcz. We have satisfied him. Now that we have done that, how does that change what was before us? We vote on appointments as a committee based on the recommendation of the superintendent. How do we vote on a non appointment? This was in fact a non appointment, the contract was expiring.

Attorney Myers stated that you are voting that there was an opening.

Mrs. Loffredo agreed with Mr. DelFino. In this state the only person who can appoint someone for a contract would be the Superintendent. Even if the Committee votes against the non renewal of the contract tonight, would that in fact give Mr. Chrabaszcz a job.

Attorney Myers stated that the question was, if the School Committee decided not to take the vote, not accept the recommendation, what happens. Then what happened was, there

Mrs. Loffredo agreed with Mr. DelFino. In this state the only person who can appoint someone for a contract would be the Superintendent. Even if the Committee votes against the non renewal of the contract tonight, would that in fact give Mr. Chrabaszcz a job.

Attorney Myers stated that the question was, if the School Committee decided not to take the vote, not accept the recommendation, what happens. Then what happened was, there was no contract and you have to re address to the Superintendent the issues as to the basis for the non renewal.

Mrs. Loffredo said that clearly by law only the Superintendent can make a recommendation for appointment. The action we take tonight has no bearing on whether Mr. Chrabaszcz gets re-appointed or not because we can't make that decision, only the Superintendent can. Even if we voted to renew his contract, the Superintendent, unless he chose to do that, we could not take that action ourselves.

Attorney Myers replied, that was correct.

Mr. Santilli said that right now, Mr. DelFino and Mrs. Loffredo have opened up a door that he hadn't even thought about. Why were we voting on this?

Mrs. Carlone replied that Attorney Myers has tried to answer that. A position has to be taken to state that there would be a vacancy based on a non renewal.

Mr. Voccio understood Mr. DelFino's and Mrs. Loffredo's point. We have principals in our school system with one, two or three year contracts. He has seen contracts finished after the first year and the Superintendent has brought forth and we have appointed people for two more years or given them a three year contract on the merits of the Superintendent and Superintendent's in the past.

Mr. Voccio said that this was his first experience where it has come to the vote. If it be a vote of the School Committee or it could be that the contract would not renew itself, would automatically cease and there would be no position for any person that has a one or two year contract and the time expired if he/she is not appointed by the School Committee or recommended by the superintendent then that position becomes vacant automatically. However, this was just to confirm the Superintendent's position to bring it to a vote. He didn't know why we had a public hearing, he understood that Mr. Chrabaszcz wanted a public hearing, he understood that there would probably be more hearings in the future. The Superintendent at that time will have to bring up more information if it goes into further litigation that can't be developed here this evening.

Mrs. Carlone said that it was her understanding that this was a housekeeping procedure that has to be done on the floor and we have to have a vote on it. This was what she was told by legal counsel. She stated the following for the record. "Mr. Chrabaszcz, are you the same Stephen Chrabaszcz that singed this employment contract?"

Mr. Chrabaszcz replied, yes he was.

Mrs. Carlone said that it was her understanding that this was a housekeeping procedure that has to be done on the floor and we have to have a vote on it. This was what she was told by legal counsel. She stated the following for the record. "Mr. Chrabaszcz, are you the same Stephen Chrabaszcz that singed this employment contract?"

Mr. Chrabaszcz replied, yes he was.

Mrs. Taylor, School Committee Secretary confirmed that he was that person.

Mr. Stephen Placella, Mr. Chrabaszcz' attorney addressed the School Committee. He stated that Dr. Jolin's notification letter to Mr. Chrabaszcz of June 15, 2000 indicated that in review of his performance he concluded that there were better administrators available. Mr. Chrabaszcz' employment contract that you alluded to and identified as being his signature, page 9 section XIII, indicates an elaborate procedure set out to evaluate Mr. Chrabaszcz. He asked each and every member of the School Committee to look closely at the letter and look closely at that provision in the employment contract. Mr. Chrabaszcz was never evaluated. When each of you have to make a final decision, he asked that the committee make an independent judgement based upon the fact, was he evaluated properly. Look at the contract, look at the letter, look at the obligation.

Dr. Jolin stated that this was a very difficult situation, he didn't ask that he be respected because the people didn't know him that well. He sat here this evening in a public situation trying to do his job for the best interest of every single student in the school system. A question was raised by Mr. Chrabaszcz' attorney, Mr. Placella and he attempted to respond to it. It became necessary for him to place Mr. Chrabaszcz on leave with pay pending the outcome of an investigation as to some supposed acts on Mr. Chrabaszcz' part that may have been unprofessional. It was not possible to complete a full evaluation while he was on that leave. Again, the nature of his recommendation was based on the preponderance of circumstances, Dr. Jolin's past professional experience, his consultation with the principal, acting prior principal and a determination that there were other more qualified administrators available.

Members of the audience shouted out for several minutes.

Mrs. Carlone reminded them that this was the School Committee doing its business in public. Public comments would not be taken this evening because it was a personnel issue. Mr. Chrabaszcz has every right to request an appeal if he is not happy with the way this committee has voted. It is his right and he can exercise that right. She stated that she would not place the School Committee in any violation.

Attorney Myers stated that if anyone tried to disrupt this meeting, they would be asked to leave or the meeting would be suspended until such time as they were quiet. The Agenda does not allow for public discussion, any public discussion would be violation and you would have to go before the Attorney General's Office as witnesses. The vice principal asked for this meeting to be in open session. That does not mean you have the right to question the School Committee or the Superintendent regarding a very narrow issue of a non renewal of a one year employment contract. There are statutory rights that he has and

Attorney Myers stated that if anyone tried to disrupt this meeting, they would be asked to leave or the meeting would be suspended until such time as they were quiet. The Agenda does not allow for public discussion, any public discussion would be violation and you would have to go before the Attorney General's Office as witnesses. The vice principal asked for this meeting to be in open session. That does not mean you have the right to question the School Committee or the Superintendent regarding a very narrow issue of a non renewal of a one year employment contract. There are statutory rights that he has and those will be followed and adhered to by this School Committee. It is inappropriate for anyone to cheer, jeer or clap.

Mr. DelFino said that any action taken by the School Committee is insignificant relative to this situation. Irregardless of what the vote is, it is not going to change what happens to Mr. Chrabaszcz.

Mrs. Carlone stated that we have legal counsel here who has advised us to do that. She is not going to put this committee in any violation and find out later that we had done anything inappropriate regarding the procedure. A recommendation has been made by the Superintendent for a non renewal. A motion has been made by Mr. Voccio and seconded by Mrs. Carlone.

Mrs. Carlone called for a roll call vote.

| | |
|---|---|
| Mr. Voccio | Yes |
| Mr. Santilli | Abstain |
| Mrs. Loffredo | Abstain |
| Mr. DelFino | Abstain |
| Mrs. Carlone | Yes |

The committee went on to the business of extending the bus contract.

Mr. Voccio moved, seconded by Mrs. Carlone to exercise their two year option in extending the bus contract between First Student, Inc. and the Johnston School Department as follows:

> 4% increase for the period July 1, 2000-June 30, 2001 for all rates included in the current contract, with all other contract provisions unchanged.
>
> 3% increase over the 2000-2001 rates for the period July 1, 2001-June 30, 2002.

Unanimous

Mrs. Loffredo moved, seconded by Mr. Voccio to adjourn the meeting.

| | |
|---|---|
| Mr. DelFino | Aye |
| Mrs. Loffredo | Aye |
| Mrs. Carlone | Aye |
| Mr. Santilli | Aye |
| Mr. Voccio | Aye |

The meeting adjourned at 7:50 p.m.

Respectfully submitted,

Martha D. Taylor

Martha D. Taylor, Secretary

# Exhibit 9

**Deposition of Manuel Vinhateiro**
**(Will supplement upon request)**

# **Exhibit 10**

Deposition of Deborah Buffi
(Will supplement upon request)

# Exhibit 11

Transcript, Johnston School Committee
(Will supplement upon request)