**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Stephen F. Chrabaszcz, Jr., et al :
:
vs. : C.A. No. 03-133S
:
Johnston School Committee, both :
Individually and as Committee Members, et al :

**PLAINTIFFS' OBJECTION TO DEFENDANTS' OBJECTION TO A PORTION OF THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE LINCOLN ALMOND OF DECEMBER 27, 2005**

Now come the Plaintiffs in the above-captioned matter and hereby file an Objection to Defendants' Objection to a Portion of the Report and Recommendation of Magistrate Judge Lincoln Almond issued on December 27, 2005.

As grounds therefor, Plaintiffs rely on the Memorandum attached hereto.

Plaintiff,
By his Attorneys,

Jeffrey D. Sowa, Esq. #5764
Christopher D. DiSano, Esq. #6788
LaPlante & Sowa, Ltd.
67 Cedar Street, Suite 102
Providence, RI 02903
(401) 273-0200 (telephone)
(401) 273-02500 (facsimile)

**CERTIFICATION**

Marc DeSisto, Esq./Kathleen M. Daniels, Esq.
Desisto Law
211 Angell Street
PO Box 2563
Providence, RI 02906

I hereby certify that on this 17th day of January, 2006, I sent via first class mail, postage prepaid, a copy of the within objection to the above-listed individuals.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| Stephen F. Chrabaszcz, Jr., et al | : | |
| | : | |
| vs. | : | C.A. No. 03-133S |
| | : | |
| Johnston School Committee, both Individually and as Committee Members, et al | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' OBJECTION TO A PORTION OF THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE LINCOLN ALMOND OF DECEMBER 27, 2005**

## I. THE MAGISTRATE'S REPORT AND RECOMMENDATION SHOULD BE APPROVED AS THE MAGISTRATE PROPERLY EXAMINED PLAINTIFF'S LIBERTY INTEREST AND APPROPRIATELY FOUND IN FAVOR OF PLAINTIFF.

Magistrate Judge Lincoln Almond issued a Report and Recommendation on December 27, 2005 in response to Defendants' Motion for Summary Judgment. Magistrate Almond's recommendation granted in part and denied in part Defendant's Motion. On January 7, 2006, Defendants objected to that portion of Magistrate Almond's decision denying their motion with respect to Count I which alleged a procedural due process claim based on the Plaintiff Stephen F. Chrabaszcz, Jr., (hereinafter "Plaintiff" or "Chrabaszcz") liberty interest. Because Defendants' objections are groundless and not supported by law, Plaintiff respectfully submits this Memorandum of Law in response to Defendants' Objection to the Report and Recommendation and rely on the arguments herein.

### A. PLAINTIFF'S REQUEST FOR A NAME CLEARING HEARING SATISFIES THE FIFTH ELEMENT NECESSARY TO PREVAIL ON A CLAIM FOR DEPRIVATION OF A LIBERTY INTEREST WITHOUT DUE PROCESS.

Defendants' first ground of objection is that Plaintiff has not requested an adequate name clearing hearing. Despite Defendants' contention, by letter dated May 8, 2000, Plaintiff's former

counsel Attorney Stephen J. Reid, Jr., wrote to Attorney Stephen M. Robinson requesting a name-clearing hearing. See letter attached hereto as Exhibit 11[1]. Attorney Reid wrote, "[t]he general descriptions of the nature of the complaints against Mr. Chrabaszcz as set forth in Dr. Jolin's letter are not in compliance with the requirements of R.I.G.L. § 16-12.1-3, entitled 'Notice required – Hearing'. . ." Id. Attorney Reid further clarified that the legislative purpose included providing

> Full disclosure of the bases or reasons for suspension, dismissal, or nonrenewal and that the hearing which may follow, while providing administrators and school committees a meaningful hedge against mistaken or impermissible actions as well as an opportunity to question and confront those individuals whose judgment or allegations furnish the basis for the actions taken, are ultimately intended to erase harmful innuendo from any suspension, dismissal, or nonrenewal of an administrator.

Id.

In addition to Attorney Reid's letter requesting a name-clearing hearing, Plaintiff's co-counsel Stephen M. Placella held telephone conversations with Superintendent Jolin requesting a name-clearing hearing. See Affidavit attached hereto as Exhibit 12. Moreover, Attorney Placella requested a name-clearing hearing at a regularly scheduled public Johnston School Committee Meeting held on June 20, 2000. See Affidavit attached hereto as Exhibit 12. See also Johnston School Comm. Minutes June 20, 2000, Defendants' Exhibit 12 in Support of Motion for Summary Judgment at 7.

Circuit courts have established that correspondence alone, such as the letter Plaintiffs' former counsel sent to Attorney Robinson, is a sufficient request for a name clearing hearing.

---

[1] While Defendants failed to even raise this issue in support of their Motion for Summary Judgment, they now seek to utilize it to avoid legal culpability. In support of their desperate attempt, Defendants seek to amend the record through Rule 72(b) to include an Interrogatory Answer of Plaintiff that retains a valid objection. In the event that this Honorable Court is inclined to so amend the record, Plaintiff offers Exhibits 11 and 12 in rebuttal and seeks their inclusion through the same Rule.

See Ersek v. Springfield, 102 F.3d 79, 84 n.8 (3d Cir. 1996). The facts in Ersek are similar to those currently before this Court. Id. In that case, Ersek's attorney, in a letter to the Township solicitor, after the allegedly harmful statement was made but prior to institution of the lawsuit, wrote that the Township never afforded Ersek an opportunity to respond to the fabricated statements. Id. According to the court, "[t]his is probably sufficient, notwithstanding Ersek's answer to an interrogatory after initiation of suit that he had not demanded a name-clearing hearing." Id.[2]

Because Plaintiff fully satisfied the fifth element necessary to prevail on a claim for deprivation of a liberty interest by properly demanding a name-clearing hearing, the Magistrate's Report and Recommendation should be approved.

### B. PLAINTIFF, WHO WAS PLACED ON ADMINISTRATIVE LEAVE AND NOT SUSPENDED, IS FORECLOSED FROM PURSUING A STATE REMEDY, THEREFORE, PLAINTIFF MUST BE PERMITTED TO SEEK A PROCEDURAL DUE PROCESS REMEDY.

Despite the Defendants' contention that there is an adequate state remedy, the Rhode Island Supreme Court, only two years ago, closely scrutinized the availability of a state remedy in a similar matter, concluding there was none. See generally Martone v. Johnston Sch. Comm., 824 A.2d 426 (2003).

In Martone, the Rhode Island Supreme Court held a teacher, placed on administrative leave, was not entitled to the protection of a hearing under the Teachers' Tenure Act because the

[2] Defendants contend that Plaintiff's answer an interrogatory confirms that he had never requested a name-clearing hearing; however, Defendants' misread Plaintiff's interrogatory answer. Plaintiff answered Interrogatory No. 7, truthfully asserting that he had not communicated with Defendants after his placement on administrative leave. Defendants have at no time questioned whether Plaintiff's counsel communicated with Defendants after Plaintiff was placed on administrative leave. Furthermore, Plaintiff asserted a continuing objection to Defendants' request and at no time did Defendants' move to compel further answers. Finally, Defendants had ample opportunity to question Plaintiff via oral depositions yet at no time questioned whether Plaintiff's counsel communicated with Defendants after Plaintiff's placement on administrative leave. Defendants' reliance on Plaintiff's interrogatory answer is misplaced and certainly does not contradict the plain language of Attorney Reid's letter to Attorney Robinson, nor the conversations between Attorney Placella and Defendant Jolin.

teacher was not "suspended." Id. at 431. Like Chrabaszcz, Martone sought to take advantage of Title XVI of the Rhode Island General Laws. In such case, Martone's counsel attempted to follow the precise procedure suggested by Defendants' counsel here but was precluded from pursuing a Writ of Mandamus because administrative leave with pay is not the equivalent of a suspension, sufficient to trigger the statutory protection.

Apart from Martone's employment as a teacher and Chrabascz's employment as an administrator, the "administrative leave with pay" process was indistinguishable for the two men employed by the Johnston Public Schools. Just as Chrabaszcz received a letter from Dr. Michael W. Jolin, Superintendent of Johnston Schools, informing him that he was "on leave with pay pending an investigation of matters of a confidential nature," Martone received the same letter placing him "on leave with pay pending [an] investigation of matters of a confidential nature regarding [Martone's] professional conduct" from Jolin. Similar to the Teachers' Tenure Act, "suspension" is undefined in the Administrators' Bill of Rights. Compare R.I. Gen. Laws § 16-12.1-3 with R.I. Gen. Laws § 16-13-5(b).

Although Martone considered the issue in the context of the Teachers' Tenure Act, the principle is equally applicable here, in the context of the Administrators' Bill of Rights. Indeed, the statutes' hearing requirement provisions are virtually identical. Compare R.I. Gen. Laws § 16-12.1-3 with R.I. Gen. Laws § 16-13-5(b). While Defendants contend that Plaintiff Chrabaszcz has an adequate state remedy, namely, the right to request a hearing under the Administrators' Bill of Rights, Martone establishes that Plaintiff, who was placed on administrative leave with pay, is not entitled to take advantage of the hearing requirements afforded by the Administrators' Bill of Rights because he was not suspended and therefore

cannot seek a Writ of Mandamus. See id. Consequently, Defendants suggestion that Plaintiff should seek a writ of mandamus is flawed.

Because the result in Martone dictates that Plaintiff is without an adequate state remedy, this Court should uphold the Magistrate's Report and Recommendation and hold that a procedural due process remedy is appropriate.

### C. BECAUSE PLAINTIFFS HAVE ESTABLISHED THE EXISTENCE OF A CLEARLY ESTABLISHED LAW AND BECAUSE A REASONABLE OFFICIAL WOULD HAVE UNDERSTOOD SUCH CONDUCT TO BE VIOLATIVE OF SUCH A CLEARLY ESTABLISHED LAW, DEFENDANTS CANNOT BE DEEMED QUALIFIEDLY IMMUNE.

As the First Circuit has oft expressed, "[w]here, as here, a party's entitlement to summary judgment hinges on a claim of qualified immunity, we must balance the need to vindicate constitutional rights against the need to insulate public officials from civil litigation that might unduly inhibit the assiduous discharge of their duties." See Savard v. Rhode Island, 338 F.3d 23, 27 (1st Cir. 2003). The court's three-part algorithm considers 1) whether Plaintiff has established a constitutional violation; 2) whether the law was clearly established at the time of the constitutional violation; and 3) whether a reasonable official would have understood that the conduct contravened established law. Id.

The United States Magistrate Judge properly addressed the merits of Plaintiff's due process claim, finding that Plaintiffs have a legally cognizable claim that defendant's conduct violated a constitutional right. See Chrabaszcz v. Johnston Sch. Comm., Report and Recommendation, slip op. (Dec. 27, 2005). As the United States Magistrate Judge correctly noted, Plaintiff must also show that the right was clearly established and that a reasonable, similarly situated official would have understood the challenged conduct violated such clearly established law (in this case, procedural due process). See Brosseau v. Haugen, 543 U.S. 194

(2004). See also Savard v. State, 338 F.3d 23, 27 (1st Cir. 2003). Chrabaszcz v. Johnston Sch. Comm., Report and Recommendation, slip op. at 23 (Dec. 27, 2005).

As the First Circuit aptly stated, [t]o attain the necessary perspective, an inquiring court must look back in time and conduct the juridical equivalent of an archeological dig. Savard, 338 F.3d at 28. In engaging in this archeological dig, the court's "exploration is not limited to cases directly on point." Id. "[A] reasonable official need only be on notice that a certain course of conduct will violate the law." Id. "Overcoming a qualified immunity defense does not require a plaintiff to show that either the particular conduct complained of or some materially indistinguishable conduct has previously been found unlawful." Id.

It cannot be contested that at the time of Plaintiff's administrative leave and eventual non-renewal, procedural due process law was clearly established. As early as 1990, the First Circuit had established that "a public employer's decisions regarding employment status 'may damage the employee's reputation to such an extent that his 'liberty' to seek another job is significantly impaired.'" Chrabaszcz v. Johnston Sch. Comm., Report and Recommendation, slip op. at 14-15 (Dec. 27, 2005) (quoting Ortega-Rosario v. Alvarado-Ortiz, 917 F.2d 71, 74 (1st Cir. 1990)).

In addition, Defendants' newfound reliance upon the decision in Marquez-Marin v. Gonzales, 2005 U.S. Dist. LEXIS 34319, is wholly misplaced. In short, Defendants seek to use the holding in such case to support the general premise that a reasonable official's awareness of an abstract right does not equate to knowledge that his conduct infringes the right. This is incorrect and inapplicable to the particular circumstances of the case at bar.

In Marquez, the Plaintiff, an assistant U.S. Attorney, brought suit alleging that she should have been afforded procedural due process, namely, a name clearing hearing, after her supervisor circulated, **internally**, false and defamatory statements about her and refused to provide her such a hearing (Emphasis added). In holding that plaintiff failed to state a claim vis-à-vis the alleged violation of a liberty interest, the Court found that plaintiff alleged only "that Garcia [defendant] was responsible for sharing the contents of the alleged defamatory letter with the supervisors in the office." Id. at *11. As such, the Court reasoned that plaintiff failed to allege or demonstrate that Garcia published such statements to members of the public or to prospective employers, therefore, the "public dissemination" requirement required to demonstrate the deprivation of a liberty interest was not triggered. The result was an unviable claim.

Because the plaintiff in Marquez failed to satisfy the "public dissemination" requirement, she necessarily failed as to her effort to overcome a qualified immunity defense. At the time, to demonstrate entitlement to such a name clearing hearing, the employee must have been able to show that "stigmatizing statements or charges were intentionally publicized by the government. Id. at *20. In Marquez, Garcia knew of this clearly established law. That is, that statements made **to the public** required a name clearing hearing (Emphasis added). Had Garcia disseminated such information to a widespread, public audience the Court implicitly acknowledges that a clearly established right would have been violated. What Garcia did not know, however, was that dissemination only to supervisors of plaintiff was arguably sufficient public "publication" to trigger entitlement to a name clearing hearing. As a result, the Court reasoned that Garcia could not have known that he violated a clearly established law because an official in his position would not have appreciated that mere dissemination of potentially false or defamatory information, **intra-office**, could potentially violate a liberty interest (Emphasis

added). Moreover, since the Court previously found that such dissemination would not be violative of such an interest (for want of public "publication"), it was necessarily impossible to find Garcia in violation of a "clearly established right." As a result, the Court reasoned that a reasonable official's awareness of the existence of an abstract right, such as a right to a name clearing hearing under those certain circumstances, did not equate to knowledge that his conduct infringes the right.

Here, the circumstances are markedly different. First, it is unquestionable that Defendants knew of Chrabaszcz's entitlement to procedural due process and right to request a name clearing hearing. See Affidavit attached hereto as Exhibit 12. See also Chrabaszcz v. Johnston Sch. Comm., Report and Recommendation, slip op. at 24 (Dec. 27, 2005) (citing PL's Ex. 1, Santilli Dep. at 31-32.) In addition, Defendants, without question, disseminated the information in a most public and widespread manner, in stark contrast to the facts of Marquez. See Chrabaszcz v. Johnston Sch. Comm., Report and Recommendation, slip op. at 19 (Dec. 27, 2005) (citing PL's Ex. 1, Santilli Dep. at 31-32.) As such, Defendants attempt to import the specific holding of Marquez – tailor the same and generally apply it to the factually dissimilar circumstances in the case at bar, must fail.

Defendants have further asserted that the Magistrate failed to address the factual basis for finding that the Defendants have not established an entitlement to summary judgment on their qualified immunity defense. Defendants' assertion is simply untrue. The Magistrate went to great lengths to discuss both Defendants' awareness of the law and understanding that their conduct violated a clearly established right. As the Magistrate illustrated, School Committee Defendant David Santilli testified that he questioned Dr. Jolin about Plaintiff's status and when he would be "brought back in" to work. Santilli testified he advised Dr. Jolin, "if the

investigation is finished, then bring [Plaintiff] back," and that he "showed [his] objection" to leaving Plaintiff on administrative leave and felt doing so was not fair. See Chrabaszcz v. Johnston Sch. Comm., Report and Recommendation, slip op. at 24 (Dec. 27, 2005) (citing PL's Ex. 1, Santilli Dep. at 31-32.).

Furthermore, a reasonable official, similarly situated would undoubtedly have understood that the Johnston School Committee's conduct violated a clearly established right. Indeed, on February 20, 2004, Dr. Jolin in a deposition taken by Plaintiff's counsel, testified that he knew that keeping Plaintiff Chrabaszcz on administrative leave would create innuendos. "[Plaintiff's Counsel:] So, on April 12, 2000, Mr. Chrabaszcz is placed on administrative leave with pay? [Dr. Jolin:] Yes. [Plaintiff's Counsel:] At that time, you were aware that, again, innuendos could result from him being placed or put out of the building, so to speak, right? [Dr. Jolin:] Yes." Moreover, Plaintiff's counsel urged Defendant Jolin in telephone conversations and at a Johnston School Committee meeting dated June 20, 2000 to afford Mr. Chrabaszcz a vehicle to be heard regarding the various allegations which had given rise to his administrative leave, as well as his banishment from the Johnston School Department buildings, in order to clear Plaintiff's name. See Affidavit attached hereto as Exhibit 12. In reply, Dr. Jolin *acknowledged* to Plaintiff's counsel that "Mr. Chrabaszcz would have his opportunity to be heard as (Jolin) understood it to be required by law." See Affidavit attached hereto as Exhibit 12.

As such, apart from the Magistrate's thorough analysis of the factual circumstances in this matter, which give rise to the Magistrate's finding that a reasonable official would understood this conduct violated a clearly established right, Defendants' deposition testimony and Plaintiff's Exhibits establish not only that a reasonable official would understand this

conduct violated a clearly established right but that the Defendants themselves in fact understood and openly recognized that their conduct violated Plaintiff's rights.

## CONCLUSION

For the foregoing reasons and any further arguments or evidence as may be adduced hereafter at hearing or otherwise, Plaintiff respectfully request that the Report and Recommendation of Magistrate Judge Lincoln Almond dated December 27, 2005 denying Defendant's motion to dismiss be approved.

Plaintiff,
By his Attorneys,

Jeffrey D. Sowa, Esq. #5764
Christopher D. DiSano, Esq. #6788
LaPlante & Sowa, Ltd.
67 Cedar Street, Suite 102
Providence, RI 02903
(401) 273-0200 (telephone)
(401) 273-02500 (facsimile)

## CERTIFICATION

Marc DeSisto, Esq.
Kathleen M. Daniels, Esq.
Desisto Law
211 Angell Street
PO Box 2563
Providence, RI 02906

I hereby certify that on this 17th day of January, 2006, I sent via first class mail, postage prepaid, a copy of the within to the above-listed individuals.

BLISH & CAVANAGH LLP

COUNSELLORS AT LAW

May 8, 2000

Joseph V. Cavanagh, Jr.
William R. Landry
Edmund L. Alves, Jr.
Stephen J. Reid, Jr.
Karen A. Pelczarski
Scott T. Spear
Raymond A. Marcaccio

Staci L. Sawyer
Kristin Rodgers Sullivan
Christopher M. Rawson
Thomas E. Romano
Jeanne M. Scott

John H. Blish
Of Counsel

Stephen M. Robinson, Esq.
Asquith, Mahoney & Robinson
155 South Main Street
Providence, RI 02903

***RE: Stephen F. Chrabaszcz, Jr./Johnston School Committee***

Dear Mr. Robinson:

This will acknowledge my receipt of a copy of Michael W. Jolin, Ph.D.'s letter to Stephen F. Chrabaszcz, Jr. dated May 1, 2000 (copy enclosed). The general descriptions of the nature of the complaints against Mr. Chrabaszcz as set forth in Dr. Jolin's letter are not in compliance with the requirements of R.I.G.L. §16-12.1-3, entitled "Notice required - Hearing", pursuant to which Mr. Chrabaszcz is entitled to:

> " (a) a concise, clear, written statement, privately communicated, of the bases or reasons for the suspension, dismissal, or non-renewal, and ..."

The legislative purpose of the School Administrators' Rights Act, as set forth in R.I.G.L. §16-12.1-1, is clear:

> "...the general assembly deems it necessary to the orderly and effective functioning of public education to inform school administrators of the bases or reasons for their suspension, dismissal, or nonrenewal of their employment relationship, and to afford administrators an opportunity to be heard before the school

Commerce Center · 30 Exchange Terrace · Providence, Rhode Island 02903-1765 · Tel (401) 831-8900 · Fax (401) 751-7542
www.blishcavlaw.com · Tax ID# 050421848

> committee. Full disclosure of the bases or reasons for suspension, dismissal, or nonrenewal and the hearing which may follow, while providing administrators and school committees a meaningful hedge against mistaken or impermissible actions as well as an opportunity to question and confront those individuals whose judgment or allegations furnish the basis for the actions taken, are ultimately intended to erase harmful innuendo from any suspension, dismissal, or nonrenewal of an administrator." (Emphasis Added.)

The general descriptions of the complaints against Mr. Chrabaszcz contained in Dr. Jolin's letter are directly contrary to the legislative purpose of the Act. Rather than "erase harmful innuendo", Dr. Jolin's general descriptions of the complaints are inflammatory and misleading.

In addition, Dr. Jolin's letter does not contain the statutorily-required:

> "(b) notification of the right of the administrator to a prompt hearing, which shall be at the election of the administrator, and the right to be represented by counsel at the hearing."

Notwithstanding the deficiencies of Dr. Jolin's letter, and in light of the failure, neglect, and/or refusal of the School Committee to immediately revoke Mr. Chrabaszcz's suspension and reinstate him as Assistant Principal, on behalf of Mr. Chrabaszcz, I hereby demand that the School Committee promptly schedule the hearing to which Mr. Chrabaszcz is statutorily entitled pursuant to R.I.G.L. §16-12.1-3.

Very truly yours,

Stephen J. Reid, Jr.

SJR/ll
cc: Steven M. Placella, Esq.
Mr. Stephen F. Chrabaszcz, Jr.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Stepeh F. Chrabaszcz, Jr., et al,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **C.A. No. 03-1335** |
| | : | |
| **Johnston School Committee, both** | : | |
| **Individually and as Committee Members, et al,** | : | |
| **Defendants** | | |

**AFFIDAVIT OF**
**ATTORNEY STEVEN M. PLACELLA**

I, Steven M. Placella, first being duly sworn on oath, hereby make affidavit and say:

1. That I, Steven M. Placella, presently reside in the State of Rhode Island;

2. That I am presently engaged in the Practice of Law in the State of Rhode Island with a principal place of business located at 1304 Atwood Avenue, Johnston, Rhode Island;

3. I have been licensed to practice law within the State of Rhode Island since 1980;

4. In or about April, 2000, I was retained by Stephen F. Chrabaszcz, Jr., to represent his interests arising out of his placement on Administrative Leave With Pay, so-called, by the Johnston School Department;

5. During my representation of Mr. Chrabaszcz between April, 2000, and some time thereafter in 2000, I had at least two or more telephone conversations with the Superintendent of Johnston Public Schools, Michael Jolin, during which I implored him to allow Mr. Chrabaszcz to return to work and indicated to him that it would be highly impractical, if not impossible, for Mr. Chrabaszcz to successfully apply for any other administrative school positions while he was out on Administrative Leave, so-called;

6. During these telephone conversations with the Superintendent of Johnston Public Schools, Michael Jolin, I urged him to allow Mr. Chrabaszcz a vehicle to be heard regarding the various allegations which had given rise to his Administrative Leave, so-called, and Mr. Chrabaszcz' banishment from the Johnston School Department buildings as again, I indicated to him that it would be highly impractical, if not impossible, for Mr. Chrabaszcz to successfully apply for any other administrative school positions until either his name and professional reputation had been cleared or any investigation had reached finality.

7. During these telephone conversations with Michael Jolin, he indicated to me that Mr. Chrabaszcz would have his opportunity to be heard as he understood it to be required by law.

8. As a further part of my representation of Mr. Chrabaszcz, I attended a scheduled meeting of the Johnston School Committee on June 20, 2000 and spoke on his behalf.

9. At that time and in that venue, I briefly inquired of both Michael Jolin and the present Johnston School Committee members as to the continued necessity of Mr. Chrabaszcz' Administrative Leave status and whether he would have an opportunity to be heard relative to the outstanding allegations that had been made against him.

Steven M. Placella

STATE OF RHODE ISLAND COUNTY OF PROVIDENCE

Subscribed and sworn to before me in the Town of Johnston, this 17th day of January, 2005.

OFFICIAL SEAL
LOUIS M. D'ANTUONO
NOTARY PUBLIC - RHODE ISLAND
My Comm. Expires 6/28/09

Notary Public