**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Stephen F. Chrabaszcz, Jr., et al

v. C.A. No. 03-133 S

Johnston School Committee, both
Individually and as Committee Members, et al.

**RENEWED MOTION FOR JUDGMENT AFTER TRIAL, MOTION FOR A NEW TRIAL, OR IN THE ALTERNATIVE, FOR A REMITTITUR, of DEFENDANTS, THE TOWN OF JOHNSTON AND DR. MICHAEL JOLIN**

Now come the defendants, the Town of Johnston and Dr. Michael Jolin and, pursuant to R.C.P. 50(b) and R.C.P. 59(a) renew their Motion for Judgment as a matter of law and/or, in the alternative, defendants hereby move for a new trial and/or the issuance of a Remittitur reducing the award of damages. In support thereof, defendants rely upon their previously articulated reasons presented in their oral Motion for Judgment as a Matter of Law and in the Memorandum of Law attached and incorporated herein.

Defendants,
By their Attorney,

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Stephen F. Chrabaszcz, Jr., et al

v. C.A. No. 03-133 S

Johnston School Committee, both
Individually and as Committee Members, et al.

**MEMORANDUM OF LAW IN SUPPORT OF THE RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION FOR A NEW TRIAL, OR IN THE ALTERNATIVE FOR A REMITTITUR of DEFENDANTS, THE TOWN OF JOHNSTON AND DR. MICHAEL JOLIN**

## I. INTRODUCTION

On May 22, 2006, judgment in accordance with the jury verdict was entered against the defendants the Town of Johnston and Dr. Michael Jolin. Defendants hereby renew their motion for judgment as a matter of law on all counts, or in the alternative move for a new trial pursuant to R.C.P. 50 (b) and R.C.P. 59(a). Specifically, defendants respectfully request that judgment as a matter of law enter on plaintiffs' claims of breach of contract, defamation and loss of consortium or, in the alternative, that they be granted a new trial on the adverse verdicts. Defendants further submit that a remittitur is nevertheless appropriate in that the damage amount awarded by the jury is not a rational appraisal of the damages presented before the jury. Defendants' arguments are set forth below.

## II. STANDARDS

### *A. Renewed Motion for Judgment as a Matter of Law*

In accordance with R.C.P. 50(b), defendants first renew their Motion for Judgment as a matter of law. A renewed Motion for Judgment as a matter of law will be granted if the evidence, together with all reasonable inferences in favor of the verdict, lead a reasonable person

to only one conclusion, namely, that the there is a total failure of evidence to prove plaintiff's case. *Vazquez-Valentin v. Santiago-Diaz, 385 F.3d 23, 29 (1st Cir. 2004); Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994).* As more fully outlined below and as articulated during their oral motion for judgment at the close of plaintiffs' case, judgment as a matter of law should enter on all counts because a reasonable jury could not have found that the defendants' actions amounted to a breach of contract, defamation or loss of consortium.

*B. Motion for New Trial*

Defendants alternatively request a new trial on all counts. The standard for granting a new trial requires this Court to find that "the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice." *Coffran vs. Hitchcock Clinic, Inc., 683 F.2d 5, 6 (1st Cir. 1982).* Defendants submit that once this matter is parsed down to the actual claims, it is apparent that the clear weight of the evidence does not support the jury's verdict. Rather, having heard additional testimony and evidence regarding the administrative leave claim, it is apparent that the jury was unduly swayed to render a verdict in favor of plaintiffs without supporting evidence on all elements of the claims. Defendants thus submit that in addition to the verdict being against the clear weight of the evidence, it would be a miscarriage of justice for the current verdict to stand.

*C. Motion for Remittitur*

Should the Court deny defendants' renewed motion for judgment or, in the alternative, motion for a new trial, defendant would ask this Court to issue a remittitur. Under the doctrine of remittitur, a court may condition the need for a new trial on the issue of damages on the prevailing party's acceptance of a reduced sum of damages. *Fed.R.Civ.P. 59(a); Cahill v. TIG Premier Ins. Co., 47 F.Supp. 2d 87, 89 (D. Mass. 1999).* The decision to grant or deny a request

for remittitur is committed to the Court's discretion. *Huber v. JLG Indus., Inc., 344 F.Supp. 2d 769, 775 (D. Mass. 2003) (citing Jones & Jones v. Pineda & Pineda, 22 F.3d 391, 397 (1st Cir. 1994)).* In exercising its discretion, this Court must review the evidence in a light most favorable to the prevailing party and afford substantial deference to the jury's calculation of damages. *Cahill, 47 F.Supp. 2d at 89.* However, an award of damages may be reduced if it fails to exhibit a "rational appraisal or estimate of the damages that could be based on the evidence before the jury," or, if it is "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." *Smith v. Kmart Corp., 177 F.3d 19, 29-30 (1st Cir. 1999).* In the instant case, as more fully outlined below, there is an utter lack of support for the jury's conclusion that plaintiff suffered damages by the breach of contract in the amount of $116,600. This is apparent in light of the fact that plaintiff was only earning $67,000 in his capacity as Administrator for the Town. In addition, plaintiff offered no support to justify the $15,000 award for defamation. Consequently, defendants respectfully requests that if this Court denies its motions for judgment as a matter of law and/or the motion for a new trial, that this Court reduce the award of compensatory damages to an amount commensurate with Plaintiff's injuries as supported by the evidence.

## III. ARGUMENT

### *A. The Verdict against Dr. Michael Jolin for Breach of Contract*

Defendant, Dr. Michael Jolin first submits that he is entitled to judgment as a matter of law or, in the alternative, a new trial on the verdict against him for breach of the plaintiff's employment agreement because this defendant was not a party to the agreement. The employment agreement introduced as a full exhibit (Exhibit 1) clearly states that: "This agreement is made by and between the Johnston School Committee ("Committee") and Stephen

M. Chrabaszcz, Jr., Assistant Principal ("Administrator")". *Employment Agreement, Trial Exhibit 1 (full).* Although Dr. Jolin was the agent for the School Committee and thus his actions could result in liability on the part of the School Committee, Dr. Jolin himself could not be held to have breached the contract because he was not personally a party to the contract. *McCarthy v. Azure, 22 F.3d 351, 361 (1st Cir. 1994) (an agent is not ordinarily liable for his principal's breach of contract) citing Mastropieri v. Solmar Constr. Co., 159 A.D.2d 698, 553 N.Y.S.2d 187, 188 (App. Div. 1990) ("It is well settled that when an agent acts on behalf of a disclosed principal, the agent will not be personally liable for a breach of the contract, unless there is clear and explicit evidence of the agent's intention to be bound.") and Restatement (Second) of Agency § 328 (1958) ("An agent, by making a contract only on behalf of a competent disclosed . . . principal whom he has power so to bind, does not thereby become liable for its nonperformance.").* Thus, while Dr. Jolin's actions may or may not have resulted in the School Committee breaching the contract, that does not allow for direct liability against Dr. Jolin individually.

In addition to lacking direct liability for the breach of contract claim, Defendant, Dr. Jolin also incorporates the arguments of the Town of Johnston, set forth below, as grounds for judgment as a matter of law or granting a new trial.

*B. Breach of Contract Verdict against the Town of Johnston*

The defendant, Town of Johnston recognizes that it is the proper party for an action against the School Committee for breach of contract. However, the Town submits two reasons for this Court to grant its motion for judgment or in the alternative for a new trial on this count. First, the clear weight of the evidence does not support the conclusion that the two provisions at

issue were breached by the defendant. Second, there is no causal link between the jury's award of damages and the claimed breach.

There were two (2) contract provisions put before the jury that plaintiff relied on to support his breach of contract claim. The first is that section of the Agreement entitled "Evaluation" (Article 13). This article reads as follows:

> "The Superintendent shall evaluate the performance of the Administrator annually based minimally on the following standards of evaluation: a) Relevant language contained in this contract; b) The policies and Directors of the Committee; c) Policies and Directors of the Superintendent; d) The job description for the position assigned; e) The annual school and individual improvement goals; and f) Professional growth. Documented weak performance, an inadequate professional growth plan and/or follow-through and/or poor fiscal management are some causes for the Superintendent to mandate a plan designed to lead to satisfactory performance. . . . Generally these evaluations shall be completed between May and August."

At trial, the plaintiff argued that he never received any form of evaluation regarding his performance. During the closing arguments, plaintiff's counsel argued to the jury that had the plaintiff received a written evaluation, he could have presented that to prospective employers which, according to counsel's argument, could have resulted in plaintiff's hire.

Defendant submits in the first instance that judgment on the breach of this contract provision should enter because the defendant was incapable as a matter of law of complying with the evaluation provision until plaintiff himself submitted individual improvement goals and a professional growth plan as required by the Contract. The evaluation provision that apparently formed the basis for the jury's breach of contract verdict clearly states that the evaluation shall be based "minimally on the following standards . . . . the annual school and *individual improvement goals and f) professional growth.*" *Id. at 9-10 (emphasis added).* A plain reading of this section, giving the terms their plain and ordinary meaning, demonstrates that this annual evaluation could not be completed without the plaintiff's individual improvement goals and professional growth

plan. Such personal analysis and the plaintiff's progress regarding the same were "minimally" required for the school to prepare its own evaluation in accordance with Section XIII. In this case, the evidence demonstrated that plaintiff prepared a report of his goals and accomplishments on June 30, 2000.[1] *Letter Stephen Chrabaszcz to Dr. Jolin (June 30, 2000), Trial Exhibit 11 (full).* It is undisputed that plaintiff's contract with the Town ended on that same day, June 30, 2000. Accordingly, plaintiff himself did not provide the Town with the requisite information and documentation in a timely manner to allow it conduct the evaluation in accordance with the Contract. Judgment in favor of defendants should accordingly enter as a matter of law on plaintiff's claim that defendants breached Section XIII of the Contract.

Defendant further submits that judgment as a matter of law should enter on plaintiffs' breach of contract claim because plaintiff has failed to prove by a preponderance of the evidence that the lack of evaluation proximately caused him damages. As this Court instructed the jury, an element of a breach of contract claim is proof of damages. *Jury Instructions, at 29.* In proving that he sustained damages, plaintiff must demonstrate that the damages were the proximate result of the breach of contract. *Id. at 46.* If plaintiff cannot prove that the lack of an evaluation was the proximate cause of his alleged damages, plaintiff cannot succeed on his breach of contract claim.

The damages plaintiff claimed to have resulted from the breach of contract was his failure to find employment the following year. Defendant submits that there is an utter lack of causal

---

[1] Of course, it is also noteworthy that this "self-evaluation" was prepared over a week after the School Committee had voted to accept Dr. Jolin's recommendation not to renew plaintiff's contract. As the evaluation section of the contract makes clear, the purpose of such evaluations, which are to be completed at the end of the school year, is to determine if a plan is needed to lead to "satisfactory performance" for the remainder of the contract. Consequently, not only was plaintiff out of work at the time the evaluation could have been completed, the decision not to renew plaintiff's contract nevertheless made the evaluation procedure moot.

link between the lack of an evaluation and any monetary damage awarded by the jury in this matter ($116,518.00). During the closing argument, plaintiff's attorney argued that the failure to place a written evaluation in the file caused the plaintiff not to be able to find work because he could have presented the evaluation to prospective employers. Defendants argue to this Court that this reasoning is flawed in a number of significant ways. First, there is no requirement under the Contract that the evaluation be in writing such that plaintiff would have had a written document to rely upon in his job search.

Second, there is no evidence to suggest that the plaintiff would have received a favorable evaluation. In fact, the evidence introduced at trial could only lead to the opposite conclusion: that is, that the evaluation would not have been favorable. Under the Contract, the Superintendent was assigned the responsibility of preparing the Evaluation. In this case, the Superintendent recommended that the plaintiff's contract not be renewed because he believed there were better administrators to fill plaintiff's position. In addition, the Superintendent is the individual who placed plaintiff on administrative leave. All of these facts can only lead to the inescapable conclusion that if an evaluation had been completed it would not have been a favorable evaluation and thus would not have assisted plaintiff in his subsequent job search.

Finally, there is no evidence to even suggest let alone prove by a fair preponderance of the evidence that any prospective employer requested this written evaluation or that it would have made any difference in the plaintiff's attempts to secure another job. Plaintiff's failure to demonstrate that the evaluation would have been favorable, would have assisted him in obtaining a job or that the lack of an evaluation was the basis for his failure to obtain a job, defeat plaintiff's claim that the lack of an evaluation was the proximate cause of plaintiff's failure to obtain employment. Consequently, plaintiff failed to demonstrate that he suffered damages as a

direct and proximate result of the Town's alleged breach of the contract by failing to provide plaintiff with an evaluation. Absent proof of such damages, judgment in favor of the Town should enter on this aspect of plaintiff's breach of contract claim.

The only other provision of the contract that was allowed before the jury regarding the plaintiff's breach of contract claim is Section 16 entitled "Indemnification". This section reads as follows:

> "The School Committee will fully indemnify and/or defend the Administrator for any and all personal financial loss and expenses, including legal fees and costs, arising out of any claim, action, award, compromise, settlement or judgment attributable to any act or omission of the Administrator while acting in good faith within the scope of his/her duties or employment. Such indemnification may be provided by insurance or otherwise".

The plaintiff's position, as argued to this Court and to the jury, is that this section compels the School Committee to reimburse any and all attorney's fees incurred by the plaintiff for anything to do with his employment including his challenge to the administrative leave decision; non-renewal of the contract and this very suit. Defendant contends that this section does not mandate that the plaintiff is entitled to attorney's fees for matters challenging his employment status with the Town of Johnston and thus could not have formed the basis for the jury's conclusion that the defendants breached the Employment contract. Rather, as the heading indicates, this provision requires the Town to defend him and/or indemnify him if he is sued in connection with his role as an administrator.

"Where the language of a contract is clear and unambiguous, the Rhode Island Supreme Court has generally interpreted the parties intent based solely on the written words" and accord unambiguous words their "plain and natural meaning". *Allen Shawn Feinstein v. J Larry Brown, C.A. No. 03-436S, Memorandum and Decision (May 11, 2006)* citing *In Re: Newport Plaza*

*Associates, L.P., 985 F.2d 640, 645 (1st Cir. 1993)*. In so doing, the Court must view the provision in its entirety. *McBurney v. Teixeira, 875 A.2d 439, 443 (R.I. 2005)*.

In this case, the section at issue unambiguously states that the Town will "indemnify and/or defend" the plaintiff from any loss or expense including legal fees "attributable to any act or omission of the Administrator." The terms "indemnify" and "defend" clearly contemplate an action being brought against the administrator and not the administrator maintaining an action himself against the Town or any other individual. In fact, the provision is in concert with the R.I. General Laws requiring municipalities to indemnify and defend administrators from such suits. *See R.I.G.L. § 9-1-31.*

Thus, under its plain language, in order for this provision to be triggered, the Administrator must be sued thus requiring indemnification and defense by the Town. Obviously, the evidence was completely opposite from this circumstance. Here, the plaintiff hired an attorney to challenge the School Committee and file suit against it seeking to recover for the defendant's alleged acts. Therefore, this provision has absolutely no application to the plaintiff's claim for attorney's fees.

Similarly, the plaintiff's claim that he is entitled to attorney's fees as a result of the employment agreement fails because there was no evidence of the amount of attorney's fees expended. Defendant notes that the jury's verdict sheet indicates "plus 100% atty fees". This notation is meaningless, as reflected by this Court's Judgment, because no monetary figure is awarded. As previously noted, an element of a breach of contract claim is proof that plaintiff has been damaged by the breach. It is thus incumbent upon the plaintiff to place before the jury evidence so that it can assess the amount of damages plaintiff has allegedly suffered as a result of the claimed breach. In this case, plaintiff did not put forth any evidence regarding the amount of

lost attorney's fees. Consequently, defendants submit that the lack of any evidence of the amount of damages precludes a finding that plaintiff has been damaged by the alleged breach of this section and thus mandates judgment as a matter of law in favor of the defendants, or in the alternative, a new trial on this count.

*C. The Defamation Claim as to Dr. Jolin*

The jury found that Dr. Jolin defamed the plaintiff. At trial, only two statements of Dr. Jolin relating to the plaintiff were presented to the jury. The first statement occurred on June 20, 2000, in connection with a public meeting of the School Committee. *School Committee Meeting, June 20, 2000), Trial Exhibit 13 (full).* The minutes reflect as follows:

> "Dr. Jolin stated, for the record, that this was what is known as a pre-deprivation hearing, not a full hearing. There would be an opportunity to testify on behalf of Mr. Chrabaszcz at another time. . . . It was his responsibility to either recommend that the contract be extended or not renewed. His recommendation to the School Committee was that the contract not be renewed. The reasons for that recommendation were that Mr. Chrabaszcz has performed in a manner that he believed could be improved upon and that there were other administrators . . . that can do a better job.
>
> Mrs. Carlone cautioned the audience. She stated that any person who was disruptive would be asked to leave the meeting.
>
> *Dr. Jolin stated that he didn't want this forum to deteriorate into a discussion of Mr. Chrabaszcz's character or quality.* He had a responsibility to say whether or not he could find better people to do the job, that is he has to judge by. . . . It was his responsibility to provide excellence to this school system.

Plaintiffs' counsel argued to this Court and to the jury that the highlighted portion of this exchange was defamatory – that is, that Dr. Jolin did not want the forum to deteriorate into a discussion of Mr. Chrabaszcz's character. The second statement plaintiff alleged to be defamatory occurred during the October 3, 2000, Special Public Meeting of the Johnston School Committee. That meeting was held to address Dr. Jolin's recommendation that plaintiff's contract not be renewed. During that meeting, Dr. Jolin indicated that the plaintiff would or was

a detriment to the School Department, himself or to the students. Plaintiffs' counsel argued to this Court and to the jury that this statement was defamatory.

In addition to these actual statements, during the closing argument, plaintiffs' counsel argued to the jury that there was an "inference" of defamatory statements because there was some evidence that Superintendents call each other and therefore since Mr. Chrabaszcz was unable to find a job for a year it must have been because defamatory remarks were made about him by Superintendent Jolin to other Superintendents. Other than these three (3) offers of alleged defamatory statements, there was no other evidence presented or argued to the jury as defamatory. Dr. Jolin submits to this Court that the above statements are not defamatory as a matter of law and in addition that he retains a qualified and/or absolute privilege for his statements at both public School Committee meetings as well as to prospective employers. Finally, defendant also submits that there is no causal link between the damages awarded and the statements that were made.

Under well settled Rhode Island law an action for defamation requires proof of:

a) A false and defamatory statement concerning another;
b) An unprivileged publication to a third party;
c) Fault amounting at least to negligence on the part of the publisher; and
d) Damages unless the statement is actionable irrespective of special harm.

Healey vs. New England Newspapers, Inc. *555 A.2d 321 (R.I. 1989)*. A defamatory statement is defined as false and malicious words "which tend to degrade [a party] in society or bring him into public hatred and contempt". *Elias vs. Youngken 493 A.2d 158, 161 (1985).*

The June 20, 2000, statement alleged to be defamatory (Jolin's statement) that "he didn't want *this forum to deteriorate* into a discussion of Mr. Chrabaszcz's character or quality" simply does not fit within the definition of a defamatory statement. His sentence is not malicious and it is not false. As a matter of law it cannot be said to degrade the plaintiff in society or bring him

into public hatred and contempt. Rather, the statement merely reflects Dr. Jolin's approach to the meeting. This is even more apparent when the context of the statement is taken into consideration. As the Minutes make clear, members of the public had attended the School Committee meeting anticipating to speak on behalf of plaintiff. Dr. Jolin, after explaining the process to those present and the fact that they would have an opportunity to speak at a later date, was in the process of making his recommendation and the reason for it, when the School Committee chairperson had to cautioned the audience against being disruptive. It was then that Dr. Jolin noted that he did not want "this *forum to deteriorate* into a discussion of Mr. Charabaszcz's character or quality." Dr. Jolin reiterated that it was his responsibility to make a recommendation and he was doing that. When viewed in context and the words given their actual meaning, it is quite apparent that this statement was not defamatory. It was simply Dr. Jolin's explanation as to the purpose of the June 20, 2000, meeting.

Similarly, the statement attributed to Dr. Jolin during the October 3, 2000, Special Meeting fails to support a finding of defamation because it likewise is not defamatory. Once again, the challenged statement must viewed in context. The October 3, 2000, hearing was addressing whether plaintiff's contract should be renewed or if there were better administrators available. In making the statement that it was his opinion that plaintiff was a detriment to the school and himself, Dr. Jolin was fulfilling his own duty and obligation as the Superintendent by explaining his recommendation. He was rendering his opinion in a hearing that was made public only by the request of the plaintiff regarding whether the plaintiff should be hired for another school year. Without elaboration on this point from him, it cannot be said that his statement is false or malicious or that it tends to degrade the plaintiff in society or bring him into public hatred and contempt. Dr. Jolin submits that if his statement in the context in which it was made

is determined to be defamatory then all Superintendents from this point forward will not be able to recommend the non-renewal of any Administrator because any reason for such non-renewal could similarly be found to be defamatory.

Dr. Jolin also submits that notwithstanding the non-defamatory nature of his comments, he nonetheless has a qualified and/or absolute privilege to make those comments. "The burden of proving that the allegedly defamatory publication is not privileged lies with [the plaintiff]." *Allen Shawn Feinstein vs. J Larry Brown, C.A. No. 03-436S, Memorandum and Decision dated May 11, 2006 citing Mills vs. C.H.I.L.D., Inc., 837 A.2d 714, 720 (R.I. 2003).* A qualified privilege exists where as a matter of public policy or otherwise, individuals have a duty and/or an obligation to speak out regarding the conduct or actions of another without being subject to absolute liability. *Id. citing Ponticelli vs. Mine Safety Appliance Co., 247 A.2d 303, 305-306 (R.I. 1968); See Also Allen Shawn Feinstein vs. J Larry Brown, C.A. No. 03-436S, Memorandum and Decision dated May 11, 2006 at Page 15.*

Defendant submits that the statements he made in the context of the public hearings fit within the definition of the qualified privilege. Both statements were made in situations where Dr. Jolin had a duty as the Superintendent to speak out and voice his opinion for the good of the school department. Specifically, both hearings related to the School Committee's determination that the plaintiff not be rehired for another year. Clearly, Dr. Jolin was under a duty and/or obligation to speak out and articulate the reason for this determination. *Badger v. Greater Clark County Sch., 2005 U.S. Dist. LEXIS 4277 (D. Ind. 2005) ("Certainly, a school board has an interest and a duty to provide and maintain qualified personnel within the school corporation; thus, communications between and among board members relating to school personnel is protected by the qualified privilege").*

Defendant acknowledges that express malice can overcome a claimed qualified privilege. *Mills vs. C.H.I.L.D., Inc., 837 A.2d 714, 720 (R.I. 2003).* However, it is the plaintiff that must prove that Dr. Jolin's words were motivated by "express malice". This type of malice mandates that the plaintiff prove that Dr. Jolin was motivated by personal spite or ill will. *Ponticelli, 247 A.2d at 308.* Defendant submits that there was no evidence upon which the jury could find that Dr. Jolin's statements were motivated by personal spite or ill will. In fact, the opposite is true. At the June 20, 2000, meeting Dr. Jolin specifically indicated that he did not want to make comments about the plaintiff's character. At the October 3, 2000, meeting, Dr. Jolin's statement is broad and general so as to fit within the criteria for not rehiring the plaintiff. The determination of whether express malice was used can be decided as a matter of law. *See Feinstein, C.A. No. 03-436S, Memorandum and Decision, dated May 11, 2006, at Page 19.* In this case, there is absolutely no evidence to support a finding that Dr. Jolin possessed such express malice and therefore, judgment as a matter of law should be entered granting Dr. Jolin a qualified privilege for the allegedly defamatory statements made during the School Committee meetings.

Defendants further submit that Dr. Jolin's statements during the meetings are also entitled to absolute privilege. *See 50 Am. Jur. 2d, Libel and Slander, at § 338.* "Communications of high-ranking school officials and those made during school board meetings have often been considered absolutely privileged, at least where relevant to the official's duties or the subject of the meeting." *Id.* In this case, both challenged statements of Dr. Jolin were made during School Committee meetings and were directly relevant to Dr. Jolin's duties as the Superintendent. As such, Dr. Jolin is entitled to absolute protection from the instant defamation action for the statement made during the School Committee meetings.

The final defamatory arrow in plaintiff's quiver is the alleged "inference" that Dr. Jolin must have made defamatory comments to other Superintendents because the plaintiff was unable to secure a job. Defendant submits that this "allegation" is just that and never came close to meeting the requisite standard of proof to justify a finding of defamation. In fact, there was absolutely no evidence introduced at trial that Dr. Jolin spoke to any specific Superintendent. Plaintiff's entire proof of such defamatory statements was the a vague reference from Ms. Crowley that in the past the Smithfield Superintendent would call other Superintendents to check on candidates. There was absolutely no evidence that Dr. Jolin received such a phone call in this case or said anything to prospective employers. Any reliance on an inference that Dr. Jolin made defamatory statements[2] is so unreasonable that a claim based on this evidence should be dismissed.

In the event the Court determines that such an "inference" is sufficient to support a defamation claim, defendant also relies upon his right to qualified privilege for any alleged statements. The R.I. Supreme Court has expressly found that the qualified privilege, as outlined above, attaches to "communication by a former employer to a prospective employer with regard to a former employee's work characteristics." <u>*Swanson v. Speidel Corp.*</u>, *110 R.I. 335, 340 (R.I. 1972)*. In the instant case, even assuming that Dr. Jolin made any derogatory comments about plaintiff, plaintiff is clearly challenging alleged statements made by a former employer to prospective employers. As such, any such statements are entitled to this qualified privilege.

Finally, the evidence produced at trial failed to support a finding of any causal link between these statements by Dr. Jolin and any of the monetary damages found by the jury. In

---

[2] Of course, plaintiff's reliance upon inference and his inability to identify the actual alleged "defamatory statement" hinders the defendant from defending against such a claim through challenging the defamatory nature or falsity of the statement.

fact, there was no evidence presented to this jury that anyone other than the plaintiffs heard the comments of Dr. Jolin such to degrade him in society. There was no evidence that anyone used the statements of Dr. Jolin against the plaintiff or that the statement degraded him in society.

Moreover, on this particular claim, the jury awarded plaintiff $15,645. The record is devoid of any support for this figure. More precisely, plaintiff presented no evidence of how he was damaged by the alleged statements. The award reflects pure speculation and conjecture on the part of the jury.

Therefore, defendant, Dr. Jolin respectfully requests that judgment as a matter of law enter on the defamation claim. In the alternative, defendant request that a new trial be granted as to the count against him alleging defamation and/or that a remitter be entered amending the damage award. Defendant submits that, as more fully outlined below, such a new trial and/or remittitur is necessary should this Court determine as a matter of law that any one of the statements relied upon by the plaintiff fails to rise to the level of defamation. More precisely, should this Court determine that one or more, but not all, the statements should not have been put before the jury in support of the defamation claim, it is impossible to dissect the monetary award to adequately reflect the damage attributable to each particular statement. Allowing the full amount to stand would be a miscarriage of justice.

*D. The Town of Johnston's Adverse Verdict Regarding Defamation*

The Town incorporates all of Dr. Jolin's arguments for its contention that it should be given a new trial or this claim should be dismissed. In addition, there is no indication that anyone other than Dr. Jolin made any defamatory or derogatory statements against the plaintiff.

*E. Loss of Consortium*

As argued and noted extensively at trial, the plaintiffs' claims of loss of consortium are derivative in nature and therefore dependant on the success of the plaintiff, Stephen Chrabaszcz, Jr. in the prosecution of his tort claim of defamation. *Sama v. Cardi Corp., 569 A.2d 432, 433 (R.I. 1990) (Section 9-1-41 of R.I. General Laws did not change the common-law nature of a loss-of-consortium claim from one that was derivative to one that could be maintained independent of the underlying claims of the injured spouse).* As outlined above, defendants submit that judgment as a matter of law should enter on plaintiffs' tort claims, or in the alternative, that defendants should be accorded a new trial. Consequently, it follows, that judgment as a matter of law should enter on the loss of consortium claim, or in the alternative a new trial should be afforded.

Defendants submit that there is another reason to grant a new trial regarding the loss of consortium claims. If this Court determines that any of the claimed statements or "inferences" of Dr. Jolin are not, as a matter of law, defamatory, then the loss of consortium damages associated with those statements must likewise be rendered invalid. For instance, if the June 20, 2000, statement of Dr. Jolin is determined to be non-defamatory, as a matter of law, then the only loss of consortium claim would derive solely from the remaining statement in October of 2000. Yet, the jury heard and deliberated on testimony of the loss of companionship of the plaintiff, Stephen F. Chrabaszcz, Jr. starting in April of 2000, when he was placed on leave. There is no way based on the jury verdict form to decipher how much the plaintiffs were allegedly damaged as a result of each statement. Consequently, these defendants request a new trial on the loss of consortium claims.

*F. The Admission of Testimony and Evidence Regarding the Administrative Leave Prejudiced Defendants on the Remaining Claims*

Defendants finally submit that a new trial should be granted on all counts because the admission of testimony and evidence regarding the dismissed claim surrounding plaintiff's administrative leave prejudiced defendants to such an extent that the jury could not grant defendants a fair trial on the remaining claims. For instance, the jury heard abundant testimony from the plaintiff, Stephen F. Chrabaszcz regarding his being placed on administrative leave and the effect that it had on him and his family, including the need to have to explain himself to the public. Plaintiff's family also were allowed to testify regarding the effect the administrative leave had on them as family and how it interfered with their relationship with plaintiff. Defendants submit that despite this count being taken away from the jury, the jury could not avoid incorporating such testimony in their deliberations and failed to restrict their findings either as to liability and the damage amount to the relevant evidence. Defendants contend that it was unfair for the jury to consider evidence relating to this other conduct and resulted in a miscarriage of justice. A new trial on all remaining counts should accordingly be granted.

**IV. CONCLUSION**

For the reasons stated herein and any other reasons addressed at the oral argument, defendants respectfully request that their renewed motion for judgment as a matter of law be granted. In the alternative, defendants request a new trial on all counts.

Defendants,
By their Attorney,

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that a true copy of the within was mailed, postage prepaid, on this 31st day of May, 2006, to the following:

Jeffrey D. Sowa, Esq. (#5764)
67 Cedar Street, Suite 102
Providence, RI 02903