**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| STEPHEN F. CHRABASZCZ, JR., et. al. | : | |
| | : | |
| v. | : | C.A. No. 03-133S |
| | : | |
| JOHNSTON SCHOOL COMMITTEE, et. al. | : | |
| | : | |

**PLAINTIFFS' OBJECTION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION FOR A NEW TRIAL, OR IN THE ALTERNATIVE FOR A REMITTITUR OF DEFENDANTS, THE TOWN OF JOHNSTON AND DR. MICHAEL JOLIN**

Now come Plaintiffs, Stephen F. Chrabaszcz, Jr., Barbara Chrabaszcz, Jessica Chrabaszcz, Stephen Chrabaszcz, III, and Adam Chrabaszcz (hereinafter referred to as "Plaintiffs") in the above-captioned matter and hereby object to Defendants' Motion for Judgment as a Matter of Law, Motion for a New Trial, or in the Alternative for a Remittitur of Defendants, The Town of Johnston and Dr. Michael Jolin.

As grounds therefore, Plaintiffs rely on the attached Memorandum of Law in support thereof.

Plaintiffs,
By Their Attorneys,

Jeffrey D. Sowa, Esq. #5764
Christopher D. DiSano, Esq. #6788
LaPlante & Sowa, Ltd.
67 Cedar Street, Suite 102
Providence, RI 02903
(401) 273-0200 (telephone)
(401) 273-02500 (facsimile)

**CERTIFICATION**

Marc DeSisto, Esquire.
Desisto Law
211 Angell Street, PO Box 2563
Providence, RI 02906

I hereby certify that on this 12th day of June, 2006, I sent by first class mail, postage prepaid, a copy of the within document to the above-listed counsel.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| STEPHEN F. CHRABASZCZ, JR., et. al. | : | |
| | : | |
| v. | : | C.A. No. 03-133S |
| | : | |
| JOHNSTON SCHOOL COMMITTEE, | : | |
| et. al. | : | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OBJECTION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION FOR A NEW TRIAL, OR IN THE ALTERNATIVE FOR A REMITTITUR OF DEFENDANTS, THE TOWN OF JOHNSTON AND DR. MICHAEL JOLIN**

## Introduction

Michael Jolin and the Town of Johnston (hereinafter "Defendants"), as is their right, have filed a Motion for Judgment After Trial, Motion for a New Trial, or in the Alternative, for a Remittitur subsequent to the jury's verdict in favor of Plaintiffs on both Counts, namely, Breach of Contract and Defamation. However, Defendants have failed to separate the issues in their Memorandum in Support thereof ("Memorandum") so that the appropriate legal analysis may be applied to the respective requests for relief. As such, Plaintiffs will first address each applicable standard of review and then apply the evidence adduced at trial in accordance therewith.

## Standard of Review – Motion for Judgment as a Matter of Law

In accordance with R.C.P. 50(b), Defendants first seek to renew their Motion for Judgment as a matter of law. A renewed Motion for Judgment as a matter of law will be granted only if the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely that there is a total failure of evidence to prove Plaintiffs' case. Vazquez-Valentin v. Santiago-Diaz, 385

F.3d 23, 29 (1st Cir. 2004); Lama v. Borras, 16 F.3d 473, 477 (1st. Cir. 1994). Significantly, under Rule 50(a)(2), a motion for judgment as a matter of law must be made at the close of all the evidence if it is to be renewed after the verdict under Rule 50(b). 9 Moore's Federal Practice sec. 50.40 (Mathew Bender 3d ed.). Moreover, a motion made at the close of evidence preserves only the particular grounds asserted in that motion, so that a post-verdict Motion for Judgment as a Matter of Law may be premised only on those preserved grounds. 9 Moore's Federal Practice, sec. 50.43 (Mathew Bender 3d ed.).

Many arguments proffered by Defendants in their Memorandum were previously raised and addressed by Magistrate Judge Lincoln D. Almond, and adopted by Judge William E. Smith, at the Summary Judgment stage. See **Report and Recommendation**. Thus, the "law of the case doctrine" may provide the court with substantial guidance when revisiting these arguments. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." Christianson v. Colt Indus., 486 U.S. 800, 816 (1988).

**Jury Instructions Become Law**

In addressing Defendants' alternative Motions, this Honorable Court must analyze the jury's verdict by viewing the evidence addressed at trial in conjunction with the law given to the jury in this matter. Instructions presented to the jury become the applicable law. Moore v. Murphy, 47 F.3d 8, 11 (1st. Cir. 1995). In accordance with Rule of Civil Procedure 51, a party must object to the court's charge regarding jury instructions with reasonable specificity if the party is not in agreement. The failure to object to the

instructions in manner designated by R.C.P. 51 is treated as a procedural default. At that point the jury instructions, even if erroneous, become the law (...of that particular case.") Moore v. Murphy, 47 F.3d 8, 11 (1st. Cir. 1995); see also La Amiga del Pueblo, Inc. v. Robles, 937 F.2d 689, 690-91 (1st. Cir. 1991) (unobjected-to jury instructions become the law (of the case)); Milone v. Moceri Family, Inc., 847 F.2d 36, 38-39 (1st. Cir. 1988).

**Standard of Review – Motion for New Trial**

Defendants alternatively seek a new trial. The standard for granting a new trial requires that this Court find that "...the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice." Coffran v. Hitchcock Clinic, Inc., 683 F.2d 5, 6 (1st. Cir. 1982). [1]

**Motion for Remittitur**

Defendants also seek a remittitur of the damages awarded by the jury. Fed.R.Civ.P. 59(a) permits the court to condition the need for a new trial on the issue of damages on the prevailing party's acceptance of a reduced sum of damages. The decision to grant or deny such a request is discretionary. Huber v. JLG Indus., Inc., 344 F.Supp. 2d 769, 775 (D. Mass. 2003). However, this Court must review the evidence in a light most favorable to the prevailing party and afford substantial deference to the jury's calculation of damages. Cahill v. TIG Premier Ins. Co., 47 F.Supp. 2d 87, at 89 (D.Mass. 1999). Ultimately, a jury award should only be reduced when it is "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." Huber at 775.

[1] The District Court's denial of a new trial motion premised on the weight of the evidence is reviewed with great deference, 12 Moore's Federal Practice §59.54[4][a], and will be reversed only if there is no evidence to support the verdict, or allowing the verdict to stand would result in a miscarriage of justice. See Puerto Rico Aqueduct & Sewer Auth. V. Contructora Lluch, Inc., 169 F.3d 68, 80 (1st. Cir. 1999).

## ARGUMENT

**Breach of Contract**

Defendants claim that they should be awarded judgment as a matter of law or a new trial on the breach of contract claim for Defendant Jolin and Defendant Town of Johnson. First, they argue that Defendant Jolin was "not a proper party" to the Agreement. Second, they claim that "the weight of the evidence does not support the jury's conclusion that the two provisions at issue were breached by Defendants, nor was there a "causal link" between the jury's award of damages and the claimed breach.

Defendants' arguments are fatally flawed procedurally and as a matter of law. As discussed supra, Defendants waived all arguments not raised in their Motion for Judgment as a Matter of Law brought at the close of evidence. Notwithstanding their waiver, Defendants' contentions fail, anyway.

**The Verdict Against Defendant Jolin**

Defendants contend that Defendant Jolin was not a proper party to the breach of contract action. That contention is incorrect. While Defendant Jolin was not a named party to the contract, he held statutory duties as a superintendent. R.I.G.L. § 16-2-11. Defendant Jolin's duties as chief administrative agent of the Johnston School Committee included "administrative responsibility for the School System, including the administrative personnel functions of the School Department consistent with Policies established by the School Committee and to provide for the evaluation of department

personnel." Thus, Defendants should not be awarded judgment as a matter of law as to Defendant Jolin on this Count.

**The Verdict Against the Town of Johnston**

Defendants' next argument is that Chrabaszcz's breach of contract claim fails because of the supposed "utter lack of support for the jury's conclusion that Chrabaszcz suffered damages by the breach of contract" is also flawed. Even if no damages were proven,[2] it would not negate Defendants' breach of the Agreement. Generally, a person who is injured by a breach of contract has a right to judgment even if the breach caused no harm. Restatement (Second) of Contracts §346 (1979). Moreover, a defendant who has breached a contract cannot escape liability simply because the party harmed by the breach cannot precisely prove the amount of damages that the defendant is responsible for; "actual damages sustained by an injured party…often do, rest upon reasonable inferences to be drawn from the facts, circumstances, and data furnished by the evidence." Standard Machinery Co. v. Duncan Shaw Corp., 208 F.2d 61, 65 (1st. Cir. 1953) (citing Zuromski v. Lukaszek, 67 A.2d 685, 686 (R.I. 1941); see also National Chain Company v. Campbell, 487 A.2d 132 (R.I. 1985). Thus, the jury's proper determination that the Agreement was breached should stand.

Defendants next claim the "clear weight of the evidence does not support the conclusion that the two provisions at issue were breached by Defendants."[3]

The Agreement required an "evaluation." See **Plaintiff's Exhibit 1**.

[2] The legitimacy of Chrabaszcz's damage claim is extensively addressed infra.

[3] Since this argument involves the jury's conclusion and an analysis of the "weight" of the evidence, it appears to be properly addressed in the context of Defendants' Motion for New Trial.

The material provision of this article reads as follows:

> The superintendent shall evaluate the performance of the Administrator annually based minimally on the following standards of evaluation:
>
> a) Relevant language contained in this contract; b)the policies and directives of the Committee; c)the policies and directives of the Superintendent; d) job description for the position assigned; e) the annual school and individual improvement goals; and f) Professional Growth. *Documented* weak performance, an inadequate professional growth plan and/or follow-through and/or poor fiscal management are some causes for the Superintendent to mandate a plan designed to lead to satisfactory performance...Generally these evaluations shall be completed between May and August.

Defendants base their contention on their opinion that the "evaluation" did not have to be in writing. Defendants' argument is misplaced. Chrabaszcz never relied on that provision requiring a written evaluation. Such an interpretation was for the jury to make based upon the plain language of the Agreement and in concert with the instructions provided to them. There was certainly sufficient evidence for the jury to come to such a conclusion.

Implicit in the pertinent provision is the requirement that such an evaluation be "documented." One must simply apply the plain meaning of the word "documented" to draw the logical conclusion that the evaluation should be in writing. See Hord Corp. v. Polymer Research Corp., 275 F.Supp. 2d 229, 235 (D.R.I. 2003), quoting Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550, 552 (R.I. 1990) (the court must give [unambiguous] language its "...plain, ordinary, and usual meaning.").

That said, the unrebutted evidence established at trial confirmed that Defendants failed to evaluate Chrabaszcz *at all*. In other words, Chrabaszcz was not given a written evaluation *or* an oral evaluation by anyone.

Thus, there was absolutely no evidence presented to the jury by Defendants to counter Chrabaszcz's contention that he was not evaluated. Whether such an evaluation was supposed to be written or not, Chrabaszcz successfully argued to the jury that had Defendants armed Chrabaszcz with *any* information about his performance, including the results of the purported investigation that led to his placement on administrative leave, he would have been able to adequately address any such issues once they were raised by a prospective employer. Defendants instead, and through their breach of Chrabaszcz's Agreement, placed Chrabaszcz in an untenable position where he was unable to even raise the "administrative leave" issue because he had been completely left in the dark regarding its favorable conclusion.[4]

Defendants next argue that they were "incapable as a matter of law of complying with the provision" requiring an annual evaluation. Defendants claim that the annual evaluation could not be completed without Chrabaszcz's individual improvement goals and professional growth plan. The argument is flawed both legally and factually.

Chrabaszcz's preparation of his so-called "improvement goals and professional growth plan" (hereinafter "Self Evaluation") was not a condition precedent to his evaluation. Judge Almond has previously held that Defendants' argument is "…not convincing."[5],[6] Moreover, Defendants argument is waived by virtue of their failure to

---

[4] Importantly, while the legality of Chrabaszcz's placement on "administrative leave" was not directly considered by the jury because of this Honorable Court's dismissal of the Constitutional Claim, it still provided context for the importance of Defendants compliance with the Agreement.

[5] " 'A condition precedent is an act which must occur before performance by the other party is due.' Hope Furnace Assoc., Inc. v. FDIC, 71 F.3d 39, 43 (1st Cir. 1995) (quoting Massachusetts law). Section III does not indicate when during the year the self-evaluation must be completed. Further, Section XIII itself does not identify the self-evaluation as a condition precedent." *Report and Recommendation of Judge Lincoln D. Almond, Page 28.*

[6] Under the doctrine of "law of the case" the decisions of the courts and magistrates below is highly persuasive to the present court. CASE LAW. The decisions of the lower courts here are particularly

proffer this argument at the close of evidence and to request such an instruction for the jury.

Notwithstanding, Chrabaszcz *provided* Defendants with his individual improvement goals and professional growth plan in accordance with the Agreement. See **Plaintiffs' Exhibit 13**. There was no "deadline" noted in the Agreement for Chrabaszcz to comply with. Defendants now[7] desperately attempt to suggest that Chrabaszcz's submission of the June 30, 2000, self-evaluation somehow did not provide Defendants with enough time to prepare his evaluation. Interestingly, Chrabaszcz was barred from the school premises by Defendants on April 12, 2000, and remained as such for the rest of that school year and ordered to refrain from entering school grounds. Thus, Defendants seek to make a "timeliness" argument based upon a delay caused on their own accord. Judge Almond, in his *Report and Recommendation*, citing Bradford Dyeing Ass'n, Inc. v. J. Stog Tech GmbH, stated that "[d]efendants cannot rely on their own decision to place Plaintiff on administrative leave as a basis for nonperformance." *Report and Recommendation of Judge Almond, Pg. 29*; Bradford Dyeing, 765 A.2d 1226, 1237-38 (R.I. 2001) (if one party to a contract prevents the performance of a condition precedent by the other party, the action eliminates the condition precedent).

Even if this Honorable Court were to accept the argument proffered by Defendants on this issue, the Agreement clearly reads that the annual evaluations are generally completed between "May and August," thereby allowing Defendants plenty of time to complete the contractual obligations.

---

persuasive because Judge Smith adopted the *Report and Recommendation* of Judge Lincoln D. Almond in the present case.

[7] Defendants also failed to preserve this argument through a jury instruction and did not raise the issue before the jury.

With respect to Defendants' argument that the indemnification provision was not intended to include Plaintiffs' claims, Defendants again failed to raise the argument at the close of evidence and did not request a jury instruction on how to interpret the terms of the agreement. Thus, any argument is now waived.

Moreover, Defendants have failed to cite any case law that supports their new contention that the subject provision was not intended to indemnify Chrabaszcz for this action. The provision reads as follows:

**SECTION XVI** **INDEMNIFICATION**

> The School Committee will fully indemnify and/or defend the Administrator for any and all personal financial loss and expenses, including legal fees and costs, arising out of any claim, action, ward, compromise, settlement or judgment attributable to any act or omission of the Administrator while acting in good faith within the scope of his/her duties or employment. Such indemnification may be provided by insurance or otherwise.

The provision is rather broad and the jury clearly interpreted it to include situations exactly like this, namely, attempting to clear his name through a number of forums after allegations flowing from his employment and in his capacity as administrator had a devastating impact on his career.

The facts adduced at trial in this matter fully support the jury's verdict. Quite simply, the Agreement contained an "indemnification" provision, the request for attorneys' fees was made to the Defendants, and the Defendants failed to provide the required indemnification, including attorneys' fees.

**Damages Flowing From Breach**

Defendants failed to allege at the close of evidence that Chrabaszcz did not establish any consequential damages, and have therefore waived this argument, as well.

However, Chrabaszcz nonetheless sustained and proved consequential damages flowing from *both* provisions of the Agreement breached by the Defendants. For the reasons discussed below, Chrabaszcz lost employment opportunities and incurred substantial attorneys' fees in attempting to defend himself and to clear his name after allegations leveled against him and other actions by Defendants involving Chrabaszcz's performance as an administrator compelled him to do so.

First, Defendants' failure to provide Chrabaszcz with his contractually mandated year end evaluation affected his ability to obtain employment, particularly in the relatively unique context of this case. Any evaluation of Chrabaszcz would have been favorable. Defendants contest that assertion relying exclusively on the defamatory and baseless comments made by Defendant Jolin at the October 3, 2000 non-renewal hearing in conveniently asking the Court to draw an adverse inference that the evaluation *they failed to prepare* would have been adverse. However, the evidence at trial speaks otherwise. The only evidence offered to the jury was (1) nothing of a derogatory nature was placed in Chrabaszcz's personnel file during the 1999-2000 school year, and (2) the investigation had concluded *in Chrabaszcz's favor* two weeks prior to the end of the school year. Thus, any evaluation would have to have been favorable. Based on the evidence at trial, no other inference *could* be drawn. More importantly, the evaluation would contain information relating to the administrative leave because it was significant enough to warrant a two and a half month investigation and it involved issues relating to job procedure and performance. As Judge Almond astutely noted, "…for reasons of professional development, an evaluation would be of value even to a nonrenewed

administrator." *Report and Recommendation of Judge Almond, Pg. 30.* In this case, the evaluation would have been of great assistance to Chrabaszcz in securing employment, particularly given the peculiar circumstances surrounding his termination.

In Redgrave v. Boston Symphony Orchestra, Inc., the court held that a plaintiff may receive damages if the plaintiff proves with sufficient evidence that a breach of contract by the defendant proximately caused the loss of identifiable professional opportunities. 855 F.2d 888, 894 (1st. Cir. 1988). The Courts holding was based on the application of Massachusetts substantive contract law adopting the historical rule found in Hadley v. Baxendale. 156 Eng.Rep. 145 (1845); John Hetherington & Sons, Ltd. v. William Firth Co., 95 N.E. 961, 964 (Mass. 1911). Similarly, Rhode Island has also adopted the substantive contract law found in Hadley v. Baxendale, and therefore the reasoning applied by the First Circuit in Redgrave is highly persuasive in the case at bar. 156 Eng.Rep. 145; Redgrave, 855 F.2d 888; George v. George Berkander, Inc., 169 A.2d 370, 372 (R.I. 1961); Greene v. Creighton, 7 R.I. 1 (R.I. 1861).[8]

Thus, Chrabaszcz needed to present sufficient evidence for a jury reasonable to infer that he lost wages and professional opportunities and that these losses were the result of (or proximately related to) the Defendants' breach of contract. Redgrave, 855 F.2d at 899, 900. The damages awarded to Chrabaszcz by the jury are directly consistent with the damages awarded in Redgrave. 855 F.2d at 892. Like the plaintiff in Redgrave, Chrabaszcz presented evidence to the jury of specifically identifiable jobs, namely, those in East Providence and Smithfield. 855 F.2d at 892.

[8] In Rhode Island, the general goal of damages is to place the plaintiff in as good a position as he would have been had the other party not breached the contract. George, 169 A.2d at 370. Thus, the general rule in Rhode Island is that an injured party should be returned to as good a position as they would have been had the contract been fully performed. R.I. Turnpike Authority, 415 A.2d at 1295.

With respect to East Providence, Manuel Vinhateiro (hereinafter "Vinhateiro") testified that Plaintiff was going to be offered the Principal position at East Providence High School and that he felt that East Providence was "getting lucky" in hiring Chrabaszcz until Vinhateiro "found out by accident" about the situation in Johnston. Consequently, Chrabaszcz did not receive the job and Vinhateiro re-opened the job search. Vinhateiro testified that he was particularly concerned that Chrabaszcz had not told him about his "suspension" in Johnston. However, the jury reasonably concluded that the failure of Defendants to provide Chrabaszcz with an evaluation left him without any reasonable ability to address that issue or rebut any negative perceptions understandably held by Vinhateiro when he learned of the "suspension." In other words, Chrabaszcz was not armed with *any* information about his "suspension," and it is difficult to address a topic for which one is left in the dark. Even an oral evaluation by Defendants would have provided Chrabaszcz with the ammunition necessary to address anyone's understandable concerns relating to Chrabaszcz's job performance and / or procedures.

Thus, like the plaintiff in Redgrave, Chrabaszcz identified to the jury specific opportunities for employment that would have been offered to him, but for the harm caused by the defendants' breach of contract. 855 F.2d at 892. The resulting damages awarded, and based on the expert testimony of Dr. Arthur Wright, are fair and reasonable.

The breach of the indemnification provision also resulted in substantial damages as the jury awarded One Hundred Percent (100%) attorneys' fees to Chrabaszcz. As more fully outlined in Plaintiffs' Motion for Attorneys' Fees, which is incorporated herein by reference, the jury's verdict is appropriate. The Second Circuit case of

McGuire v. Russell-Miller, Inc., 1 F.3d 1306 (2nd Cir. 1993) is most instructive. In that case, the court held, "today we make law out of what was previously common sense: when a contract provides for an award of attorneys' fees, the jury is to decide at trial whether a party may recover such fees; if the jury decides that a party may recover attorneys' fees, then the judge is to determine a reasonable amount of fees." Id. at 1313 (emphasis added). Once the jury decided that plaintiff was liable for attorneys' fees, the district court should have determined the amount of such fees. The amount of attorneys' fees owed was not an issue of fact that required proof at trial; it was an issue for the court to review after a finding of liability. Id. at 1316. While the amount of attorneys' fees awarded has not yet been determined by this Honorable Court, the jury properly awarded those fees as damages flowing from Defendants' breach.

**Defamation**

Defendants also allege that Chrabaszcz's defamation claim fails as a matter of law because "the statements are not defamatory, Defendant Jolin is entitled to a qualified and / or absolute privilege, and that there is no causal link to the damages awarded" by the jury. Defendants arguments fail.

Defendants' new claim is that Defendant Jolin held an absolute privilege with respect to his defamatory remarks about Chrabaszcz. Defendants did not previously raise the issue in either their Motion for Judgment as a Matter of Law at the close of evidence or in the jury instructions. Therefore, the argument has been waived. Even if the issue had not been waived, Defendants did not cite *any* case law to support such an argument for these circumstances, which is indicative of the lack of legal support for their contention.

The remaining issues raised by Defendants involve jury interpretations of the evidence in conjunction with the instructions they received.

The jury was instructed on defamation as follows:

1. A false and defamatory statement concerning another;
2. An unprivileged publication to a third party
3. Fault amount at least to negligence on the part of the publisher; and
4. Damages unless the statement is actionable irrespective of special harm.

Healey v. New England Newspapers, Inc, 555 A.2d 321 (R.I. 1989). A defamatory statement is defined as false and malicious words "which tend to degrade [a party] in society or bring him into public hatred and contempt." Elias v. Youngken, 493 A.2d 158, 161 (R.I. 1985).

Importantly, "[w]hen considering whether a statement or conduct is defamatory, the court must take into account 'the context of the statement in which the publication occurs and the plain and ordinary meaning of the words in the community in which the publication occurred'" Alves v. Hometown Newspapers, Inc., 857 A.2d 743, 750-51 (R.I. 2004) (citing Swerdlick v. Koch, 721 A.2d 849, 859-60 (R.I. 1998)).

Defendants seek to isolate Defendant Jolin's defamatory statements in initially arguing his June 20, 2000 statement that "he didn't want this forum to deteriorate into a discussion of Mr. Chrabaszcz's character or quality" was not defamatory. As argued by Chrabaszcz's counsel in summation, this statement may not be defamatory in and of itself, but any such argument is buttressed by its publication in the context of Plaintiff's administrative leave (which was ongoing at the time). The evidence showed that Chrabaszcz had been placed on administrative leave on April 12, 2000, and barred from

the school premises. There was also unrebutted evidence that Defendant Jolin advised Chrabaszcz on that day that "if you challenge me on this, I will bury you." Chrabaszcz attempted to fight the administrative leave, and then Defendant Jolin's conduct backed up his threat.

The evidence at trial proved that on October 3, 2000, four months after the "administrative leave" investigation had concluded in Chrabaszcz's favor, Defendant Jolin continued his campaign to "bury" Chrabaszcz. Despite acknowledging that there was no derogatory material in Chrabaszcz's personnel file, Defendant Jolin, prompted by *his own attorney*, stated "Stephen Chrabaszcz is a detriment to the student body, a liability to myself, and a liability to the school committee." Such a comment, in and of itself, falls squarely under the laws of defamation in the state of Rhode Island. Any assertion that someone is a "detriment" and a "liability" to those around them would undoubtedly, standing alone, be considered to "…degrade [a party] in society…" Elias at 161. The "plain meaning" of "detriment" is someone who "tends to cause harm." Swerdlick, 721 A.2d 849, 859-60; *Oxford English Dictionary, Oxford University Press. Eleventh Edition, 2004, Page 391.* Yet, under the law of Rhode Island, this comment is not viewed standing alone, it is viewed within context of which it occurred. Swerdlick, 721 A.2d at 859-60. Thus, when the statement involves a school administrator who works with school children, and it is made in the context of an unresolved administrative leave, its damage is exacerbated.

The Rhode Island Supreme Court has held that comments that "insinuate" underlying facts can be defamatory. Beattie, 746 A.2d at 721. In making his defamatory comments, Defendant Jolin publicly insinuated and implied that there were

"…undisclosed defamatory facts" as a basis for his comments. Yet, the evidence at trial offered absolutely no underlying facts or basis to support Defendant Jolin's assertion.

Defendants' reliance on the qualified privilege is also misplaced. The jury was instructed on the concept of qualified immunity.

A qualified privilege does not give an individual a right to make baseless assertions and false statement. Under Mills, if Defendant Jolin enjoyed a qualified privilege, he maintained a duty to "…make statements in good faith…" the jury properly concluded that Defendant Jolin's defamatory assertion had absolutely no basis in fact and was not made in good faith. Clearly, Defendant Jolin's promise to "bury" Chrabaszcz if challenged, followed by his campaign to smear Chrabaszcz's reputation establishes "express malice," defined under Rhode Island law and the jury instructions as a statement "motivated by personal spite or ill will." Ponticelli 247 A.2d at 306-306.

The qualified privilege also applies to Defendants' new assertion that Defendant Jolin believed he had a "'…legal, moral, or social duty to speak out, or that to speak out was necessary to protect either his own interests, or those of third person[s], or certain interests of the public[]…'" Similar to the situations discussed above, such statements can only be made "…if the publisher makes the statements in good faith[.]" Mills v. C.H.I.L.D., Inc., 837 A.2d 714, 720 (R.I. 2003); citing Ponticelli v. Mine Safety Appliance, Co., 247 A.2d 303, 305-06 (R.I. 1968). For the reasons also articulated above and consistent with the jury's conclusion based upon the evidence offered at trial, Defendant Jolin's statements were not made in good faith.

Therefore Defendants' Motion should be denied.

**Statements To Prospective Employers**

Defendants next argue that Defendant Jolin defamed Chrabaszcz during discussions with prospective employers requires an "inference." However, Defendants permitted the jury instruction that "[a]n inference is reasonable when the facts proved in the case point to one conclusion of fact as being *more natural and plausible* than other conclusions that may be drawn." *Jury Instructions* at 6. (emphasis added)

Defendants mistakenly claim that no evidence was offered by Chrabaszcz to support the jury verdict. However, Defendants assertion is simply inaccurate. Plaintiffs presented evidence from Kathryn Crowley and Manuel Vinhateiro that customary practice for the employment screening committees in Smithfield and East Providence, respectively, was to speak with the applicant's previous superintendent. Each witness also testified that such contact was made with Defendant Jolin in response to Chrabaszcz's application for employment. Even Defendant Jolin admitted that he spoke to *at least* one or two prospective employers about Chrabaszcz. Defendant Jolin testified that he described Chrabaszcz as "hardworking and energetic," but that he could not "recall" what else he may have said about Chrabaszcz. Importantly, and as noted by Judge Almond in his Recommendation, Defendant Jolin *publicly* stated that Chrabaszcz was a "detriment to the student body and a liability to (Defendant Jolin) and to the School Committee). *Report and Recommendation, Pg. 20* (citing Plaintiff's Exhibit 5; Plaintiff's Exhibit 11). Thus, the jury could deduce what he would say privately.

Significantly, Kathryn Crowley testified that Chrabaszcz, who had already informed the Smithfield Screening Committee at his job interview about the administrative leave, made it to the final step of the hiring process. The final step involved Smithfield Superintendent, Roger Depot, contacting Defendant Jolin. To

Crowley's knowledge, the step was taken. Thereafter, Superintendent Depot did not choose Chrabaszcz for the job.

The jury's conclusions are subject to deference as to credibility and the reasonableness of the inference they have drawn. As Judge Almond noted, while there was no smoking gun, it was clearly reasonable for them to infer that if Defendant Jolin would share his public sentiment about Chrabaszcz privately with prospective employers. The jury clearly found that he did.

Defendants again argue that even if Defendant Jolin repeated his public comments privately, he was entitled to a qualified privilege. Defendants cite Swanson v. Speidel Corp, which holds that a qualified privilege attaches to "…communication by a former employer to a prospective employer with regard to the a formers employee's *work characteristics*." 293 A.2d 307, 310 (R.I. 1972). Additionally, Swanson holds that when a former employer communicates with a prospective employer, in order for the privilege to attach the publisher must act "…in good faith…" 293 A.2d at 310. For the reasons articulated extensively above, Defendant Jolin's comments were not made in good faith.

**Damages Linked To Defamation**

Defendants contend that the evidence produced at trial failed to support a "causal link" between Defendant Jolin's statements and the monetary damages found by the jury. Defendants have again made this argument in an untimely fashion. It was not raised at the close of evidence in Defendants' Motion for Judgment as a Matter of Law and is, therefore, waived. Moore, 47 F.3d at 11.

Additionally, based upon the instructions provided to the jury, damages assessed were permitted to flow from more than one cause of action. It was not required that the

jury specifically attach the damages award to a direct singular action. *Jury Instructions at 31* ("...Plaintiff should be compensated for *all* damages proximately resulting from the Defendants' defamation." (emphasis added). When assessing these damages, the jury was permitted to consider evidence related to "medical treatment necessary...mental suffering...[and] lost wages..." *Jury Instructions at 31.* Given that the jury heard medical testimony from the plaintiff regarding medical treatment and mental suffering, as well as an unrefuted evidence regarding lost wages / pension, the jury's damage award was appropriate.

Therefore, Defendants' Motion should be denied.

**Administrative Leave**

Defendants' final argument is that the jury was prejudiced by the admission of evidence relating to Chrabaszcz being placed on administrative leave. The argument is also fatally flawed.

The evidence related to the administrative leave, despite the dismissal of the deprivation of liberty interest claim, was relevant to the proceedings. As indicated above, the context within which defamatory statements are made is for the jury's consideration. Moreover, the circumstances surrounding Chrabaszcz's administrative leave increased the significance of his evaluation. Thus, the evidence was relevant to both of Chrabaszcz's successful claims.

Secondly, Defendants had ample opportunity to seek dismissal of those causes of action that they deemed legally insufficient. Thus, Defendants' failure to timely raise

those legal arguments cannot now be used to their advantage. Such a result would create a precedent whereby a new trial was required in the event that a plaintiff did not achieve success on *every* cause of action at the Rule 50 stage.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

(1) Deny Defendants' Motions.

(2) Grant such other and further relief as this Court deems just and proper.

Plaintiffs,
By Their Attorneys,

Jeffrey D. Sowa, Esq. #5764
Christopher D. DiSano, Esq. #6788
LaPlante & Sowa, Ltd.
67 Cedar Street, Suite 102
Providence, RI 02903
(401) 273-0200 (telephone)
(401) 273-02500 (facsimile)

**CERTIFICATION**

Marc DeSisto, Esquire.
Desisto Law
211 Angell Street, PO Box 2563
Providence, RI 02906

I hereby certify that on this 12th day of June, 2006, I sent by first class mail, postage prepaid, a copy of the within document to the above-listed counsel.