**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Stephen F. Chrabaszcz, Jr., et al

v. C.A. No. 03-133 S

Johnston School Committee, both
Individually and as Committee Members, et al.

DEFENDANT TOWN OF JOHNSTON'S MEMORANDUM IN RESPONSE TO ORDER TO SHOW CAUSE

*I. Introduction*

This matter comes before the Court on its Order that defendant, Town of Johnston, show cause why the Town should not be held in contempt and sanctioned for allegedly violating the Court's Orders date July 17, 2006, and August 2, 2006. The July 17, 2006, Order scheduled settlement conference for August 1, 2006, and ordered that counsel for each party "appear with their respective parties or someone with full financial and other authority to conduct good faith negotiations." The August 2, 2006, Order likewise contained the same directive regarding the parties attendance at a settlement conference for August 8, 2006, and further specified that the Town Council or a designated subgroup with full authority attend the conference.

As an initial matter, the Town, through its attorney, wishes to repeat the apology expressed to the Court on Monday, August 7, 2006, for its inability to comply with the Court's order directing the Town Council or a subgroup to attend the conference on August 8, 2006. That having been said, and without minimizing the sincerity of the apology, the Town would respectfully submit that its inability to comply with the Court's order was not willful or intentional and thus does not amount to contemptuous conduct. Rather, as the attached affidavits make clear, the Town made reasonable efforts to comply with the Court's Order. However, the

nature of the entity, that is the Town, as well as the short time frame, prevented the Town from fully complying with the Order. Although the undersigned was optimistic that the Town would be able to comply, when it became evident to the undersigned counsel that it could not, immediate steps were taken to advise the Court the day before the scheduled conference in order to avoid wasting the Court's time and resources. The Town thus respectfully requests that this Court find that cause has not been shown to hold the Town in contempt of Court.

*II. Standard*

It is first helpful to outline the standard to be employed in determining whether a party is in contempt of court. As the case law makes clear, in order for an individual to be found in contempt of a court order there must be "clear and convincing evidence" that the individual has violated an unequivocal order that is clear and unambiguous. *Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir.1991).*

There are essentially three (3) elements to a charge of contempt:

(1) there was a lawful court order of reasonable specificity;

(2) the appellant violated it; and

(3) the violation was willful.

*United States v. Michaud, 928 F.2d 13, 15 (1st Cir. 1991) citing United States v. Burstyn, 878 F.2d 1322, 1324 (11th Cir. 1989).* The requirement of willfulness contemplates knowledge that one is violating a court order. *Id. citing U.S. V. Marquardo, 149 F.2d 36, 43 n.4 (1st Cir. 1998).* "'Willfulness' is defined as 'a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.'" *United States v. Baker, 641 F.2d 1311, 1317 (9th Cir. 1981)(citations omitted).* It implies a "deliberate or intended violation, as distinguished from an

accidental, inadvertent, or negligent violation of an order." *Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 782 (9th Cir. 1983).*

*III. Factual Background*

As the Court is aware, this matter was tried before a jury on multiple counts against the Johnston School Committee, the Town of Johnston and various individual employees of the Town. During trial, this Court granted defendants' Rule 50 Motions for Judgment on all counts other than the claims for defamation, breach of contract and loss of consortium against the Town and former School Superintendent Michael Jolin. The breach of contract claim specifically related to the plaintiff's contract with the Johnston School Committee. The jury then returned a verdict in favor of plaintiffs on the three (3) remaining counts on May 18, 2006. On July 12, 2006 the Court heard arguments on the defendants' Renewed Motion for Judgment, Motion for a New Trial and Motion to Alter or Amend the judgment as well as the plaintiffs' Motion for Attorneys' fees, Motion to Modify and Motion for Costs.

During that hearing, the Court made inquiries regarding mediation as a possible settlement vehicle. The Court's inquiry during the hearing led the instant attorney to contact the appropriate town representatives. As more fully outlined in the attached affidavit, on July 13, 2006, Attorney Marc DeSisto spoke by telephone, followed by a letter, to Assistant Solicitor Denise Myers relaying the Court's comments regarding settlement. On July 18, 2006, the Court issued the subject Order scheduling a settlement conference for August 1, 2006. This scheduling Order was faxed on that same day to Assistant Solicitor Myers.

Because the claims and actions at issue revolved around the School Committee's alleged mistreatment of its former employer, Assistant Solicitor Myers discussed the mediation session with the current School Superintendent (via email) and the School Committee (in Executive

Session) on that same day (July 18, 2006). In particular, it is understood that Assistant Solicitor Myers discussed who would appear for the Committee at the settlement conference as well as settlement authority. Although a number, if not all of the School Committee members wanted to attend the settlement conference, various personal reasons prohibited all but the School Committee Chair from attending. It was thus decided, and Assistant Solicitor Myers informed Attorney DeSisto of the same, that the School Committee Chair would attend along with Ms. Myers for the August 1, 2006 mediation session. Attorney DeSisto likewise made arrangements for Paul Dutra, the claims adjuster for the RI Interlocal Trust, to attend the settlement conference. The Trust is providing defense and limited liability coverage in the instant case.

Unfortunately on August 1, 2006, Ms. Myers reported to the Court that the School Committee Chair was now unable to attend. Nevertheless, Ms. Myers attended the mediation session on behalf of the School Committee. Attorney DeSisto also attended along with Mr. Dutra from the Trust. The mediation session lasted over two (2) hours until almost 4:30 P.M. At the conclusion, the Court indicated that it would schedule another mediation session in one week and require the Town Council or a designated subgroup with full authority to attend the conference.

In light of the Court's stated intent, Attorney DeSisto contacted Assistant Solicitor Myers during the mid-morning of August 2, 2006, to discuss the anticipated second mediation session and the Town Council's attendance at the same. Attorney DeSisto also placed a phone call to Solicitor Lou DeSimone to relay the Court's intent. Attorney DeSisto was unable to reach Solicitor DeSimone and therefore left him a voicemail message in this regard.

On August 3, 2006, Attorney DeSisto sent a letter (by fax) to Assistant Solicitor Myers enclosing a copy of the Order scheduling the continued hearing for August 8, 2006. In that letter

Attorney DeSisto inquired about meeting with the Town Council in executive session on Monday, August 7, 2006. Upon information and belief, Assistant Solicitor Myers faxed this correspondence to Solicitor DeSimone and the Town Hall. Unfortunately, Solicitor DeSimone was out of the office that day and did not receive the Order or the voicemail messages until the end of the day. Assistant Solicitor Myers unsuccessfully attempted to facilitate an emergency meeting with the Town Council through the Town Clerk, Robin Pimental.

On that same day (August 3, 2006), Town Council President Robert Russo attempted to contact Attorney DeSisto on another case and ended up leaving him a voicemail message. Attorney DeSisto returned Mr. Russo's call that same day but could not reach him. On the next day, Friday, August 4, 2006, Attorney DeSisto again tried to contact Mr. Russo to no avail. Mr. Russo again returned Attorney DeSisto's call but Attorney DeSisto was out and therefore they missed each other again. On that same day, Attorney DeSisto left another voice mail message for Solicitor DeSimone regarding the upcoming hearing on Tuesday and the Court's requirement that the Town Council attend.

On Monday, August 7, 2006, Attorney DeSisto and Town Council President Russo were finally able to make contact. Mr. Russo then informed Attorney DeSisto that he was leaving for Belgium early the following morning and therefore would not be able to attend the scheduled settlement conference.

Attorney DeSisto then contacted Assistant Solicitor Myers and Solicitor DeSimone. Solicitor DeSimone advised Attorney DeSisto that he had been unable to schedule an executive session for the Council to discuss this matter and that in fact he had been unable to reach the Council members. Assistant Solicitor Myers thus provided the names and telephone numbers of the remaining Town Council members and Attorney DeSisto attempted to call them himself.

Unfortunately, Attorney DeSisto was only able to reach one (1) of the remaining four (4) members. Council member, Ernest Pitochelli, indicated that he was not aware of the mediation session for the next day but would make every attempt to appear at Court. However, he also indicated that he did not have any settlement authority on behalf of the Town Council.

In light of this, in order to avoid undue waste of the Court's time, Attorney DeSisto contacted Judge Smith on that same day, Monday, August 7, 2006, to advise him in advance of the schedule conference the difficulties securing Town Council's attendance at the next day's mediation session. Attorney DeSisto likewise apologized to the Court at the time for the inability to go forward on the following day.

*IV. Argument*

A. August 2, 2006, Order of Settlement Conference

As an initial matter, although Town does not specifically rely on this position in defense of the Show Cause Notice, the Town respectfully must address the Court's authority to order specific individuals to appear as the representative of the Town in a settlement conference. This issue was raised by the dissent in the *Heileman Brewing Co. v. Oat, 871 F.2d 648, (7th Cir. 1989).* In that case, the corporate defendant sent their attorney of record along with another part-time corporate attorney to the settlement conference. The corporation had decided not to offer any monetary settlement but directed the part-time attorney to explore non-monetary settlement options. The District Court concluded that the part-time attorney was not a corporate employee and thus the corporation violated the settlement conference order. Although on rehearing the Seventh Circuit affirmed the contempt finding, in his dissent, joined by three other Circuit judges, Judge Easterbrook questioned the authority of the Court to dictate who the corporation could or should designate as their representative. The Town likewise respectfully must question

as a mitigating factor the Court's determination that the Town Council or its subgroup, rather than the Town's chosen representative, is the proper representative for settlement purposes.

That having been said, the Town would further note that there is no direct authority in the Federal Rules of Civil Procedure in any event to order the attendance of parties at settlement conferences. Although questioned at times throughout the years, the Courts have come to conclude that such authority emanates from the Court's "inherent authority." *In re Atl. Pipe Corp., 304 F.3d 135, 143 (1st Cir. 2002).* However, as recognized by the First Circuit, the "district court's inherent powers are not infinite*." Id.* The principles guiding the Court's use of its inherent authority include: being used in a way "reasonably suited to the enhancement of the court's processes, including the orderly and expeditious disposition of pending cases; Second, inherent powers cannot be exercised in a manner that contradicts an applicable statute or rule; Third, the use of inherent powers must comport with procedural fairness; And, finally, inherent powers "must be exercised with restraint and discretion." *Id. citations omitted.* The Town respectfully submits that, while well intentioned, the Order in the instant case directing the Town Council or a subgroup to attend the settlement conference with full authority to settle the matter on behalf of the Town pushes the envelop of acceptable "inherent authority".

In the first instance, as noted, one of the guiding principles is that the Court may not act in a "manner inconsistent with rule or statute." *Id. See also Heileman Brewing, Co., 871 F.2d at 652*. Directing a Town Council or it subgroup to attend a settlement conference before the Court raises several questions under the Open Meetings Law of Rhode Island. As the Court is familiar, the Open Meetings Law dictates when and how a public body, such as the Town Council may meet to make decisions that affect the Town. Because there was no regularly scheduled meeting of the Town Council between August 2, 2006 and August 8, 2006, in order to have complied

with the Open Meetings Law, the Council would have had to call an emergency session. Under the statutes, an emergency meeting may be convened "to address an unexpected occurrence that requires immediate action to protect the public." *R.I.G.L. § 42-46-6(c).* As the Court is aware, under the statute, the Council was required to vote in open session to address the "unexpected occurrence" giving rise to the Emergency session and state and record in its open session minutes the reason the meeting is being convened on short notice. *Id.* The Open Meetings law does allow the Council to meet in Executive session to discuss litigation and by extension settlement of litigation. However, pursuant to *R.I.G.L. 42-46-5(a)(1-(9),* before convening in executive session, the Council must begin with an "open call" in "open session" outlining the reason and basis for the executive session. While defendant can not affirmatively state that the Court's order directing the Council or its subgroup to appear within six (6) days (four (4) business days) would have violated the Open Meetings law, there are substantial questions as to its application such to be considered as mitigating factors in addressing the instant Show Cause notice.

The Town would further submit that the Court's use of its inherent authority in the instant circumstances may run afoul of the principle that the Order "comport with procedural fairness." *In re Atl. Pipe Corp., 304 F.3d at 143.* As more fully outlined below, the biggest hurdle in the Town's compliance with the Order was the short time frame afforded to the Town to comply. The Court's decision to have the Council attend the conference essentially gave the Town four (4) business days to attempt to arrange the convening of the Council in Executive Session and/or securing the members attendance at Court. [1] Upon reflection, and after futile attempts to comply

[1] Although the Order scheduling the Conference was not issued until the afternoon of August 2, 2006, the undersigned notes that Judge Smith advised the parties on August 1, 2006, of his intent to compel the Council's attendance the following week. The undersigned further acknowledges that at that time, counsel for the Town did

with the same, the Town would now suggest that the short notice, given the nature of the ordered party (as outlined below), raises questions as to procedural fairness and thus raises questions as to the Court's exercise of its claimed inherent authority to mandate the attendance of specific individuals as representatives of a municipal party. In retrospect, the issue of the lack of procedural fairness is further demonstrated on the face of the actual Order at issue. In particular, although the Order specifically warns that a party's failure to appear without leave of court could result in sanctions, it further advises that "leave must be sought within ten (10) days of this Notice." *See Order of Settlement Conference, Document # 96 (August 2, 2006).* In this case, the Order did not give the Town ten (10) days to prepare for the conference and thus the Town did not have the noted ten (10) days within which to seek leave of Court to excuse the Town Council's attendance or make other arrangements. Of course, the Town acknowledges the circumstances (as explained by the Court) that gave rise to such an expedited session and further acknowledges that being optimistic that they could comply, the Town did not complain or advise the judge of the problems until the day before the scheduled conference. However, in the context of determining whether the Town is in contempt of court for its inability to comply, consideration should be given to this issue.

That having been said, the Town nevertheless submits that the Court can assume the validity of the Order and still find that there is no cause to find the Town in contempt of that Order. As noted, in determining whether a party is in contempt of court, the Court must find that there has been a willful violation of a Court Order. This standard requires a finding of "deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." *Falstaff Brewing Corp., 702 F.2d at 782.* In addressing this standard, the

---

not object to the short notice or express any reservations regarding the same. The reason for this action was the Town's belief that, while difficult, the Town could ultimately comply with the same.

Town would first respectfully point out that the Court should take into consideration the nature of the party at issue. Quite simply, a municipal government is a unique entity. As the Court is aware, the Town is not only unable to act as an individual party, that is, it is subject to statutory restrictions, but the Town must rely on the collective actions of individuals in order to accomplish its objectives. The Town Council, in particular, is made up of five (5) individuals who all serve on a part-time basis. The individual town council members lack individual authority to bind the Town or even act on behalf of the Council. *Fargnoli v. Cianci, 121 R.I. 153, 397 A.2d 68 (1979) (fundamental that a public body cannot act lawfully except through a quorum of its members).* Arranging and coordinating this group in less than four (4) business days is an extremely difficult task.

Defendant would submit that in determining whether there is cause to find the Town in contempt, the Court must take into consideration the efforts made to comply with the Order in light of the unique status of the Town. Unlike an individual party, a single phone call and direction would not accomplish compliance with the Court's order. The Town's lack of deliberate and willful violation of the order is best exemplified by Attorney DeSisto's telephone tag with the Council President and the Solicitors. As outlined in the attached affidavit, over a two (2) day period, August 3rd to August 4th, Council President Russo and Attorney DeSisto attempted to reach each other a total of four (4) times but were unable to connect In addition, Attorney DeSisto left at least two (2) voicemail messages for Solicitor DeSimone. Solicitor DeSimone meanwhile likewise attempted during that 48 hour period to speak to the Council President and to arrange an emergency executive session meeting. Solicitor DeSimone's efforts were buttressed by Assistant Solicitor Myers' own efforts to arrange through the Town Clerk an Executive session. While the efforts proved fruitless, they hardly support a finding of deliberate

and willful violation of the Court order. In fact, the two (2) Council members who the attorneys were able to reach in that time frame both expressed their willingness to abide by the Court's Order. Unfortunately, in addition to the fact that one of those members, the Council President, was going to be out of the country, neither of the two (2), either collectively or individually, possessed the authority to speak on behalf of the Town without at least one other member. Farnoli, *121 R.I. at 153, 397 A.2d at 68.*

This inability to make contact with the entire Town Council further negates a finding that the Town is in contempt of court. More specifically, as noted, a holding of contempt requires a finding that the party "willfully" violated the Court order. Willfulness is defined as "'a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.'" *Baker, 641 F.2d at 1317.* In this case, the attorney representing the Town, as well as its solicitors, made every reasonable attempt to contact the Council as a body. However, given their part-time status and the nature of the positions to begin with, the attorneys were simply unsuccessful in their attempt. The Council and by extension, the Town, thus cannot be said to have taken a volitional act because the majority of the Council did not learn of the court order until it was too late. This inability to make contact can best be attributed to the short time period that the Town was given to comply with the Order. Because the Town Council, as an entire body, did not have knowledge of the Order mandating their appearance on August 8, 2006, the Town cannot be found to have been aware that their actions would be in contravention of a Court order.

B. August 1, 2006 Settlement Conference

The Town would further submit that there is no basis to find the Town in contempt for the alleged failure to comply with the July 18, 2006, Settlement Notice. As previously noted, the underlying claims in the instant case surrounded the actions of the School Committee, including

the School Committee's alleged breach of contract. In light of the fact that it was the actions of the School Committee that were at issue, Assistant Solicitor Myers met with the School Committee in Executive Session to arrange the appropriate representative and settlement authority for the August 1, 2006, conference. In addition, arrangements were also made for Paul Dutra, from the R.I. Interlocal Trust, to attend this conference. Although the individual School Committee members were not able to attend, Assistant Solicitor Myers attended as their representative. Notably, Ms. Myers' settlement authority did not include any monetary authority. However, as the Courts have repeatedly found, "full authority to settle" does not mean that the individual must be willing to settle. "It simply means that the individuals at the settlement conference must be authorized by the parties both to explore fully settlement options and to agree at that time to any settlement terms acceptable to the parties." *In re Roger Novak, 932 F.2d 1397, 1407 n. 18 (11th Cir. 1991).* In the instant case, in addition to Mr. Dutra, Attorney Myers was present to explore the settlement possibilities.

**V. Conclusion**

In conclusion, as previously expressed to the Court on Monday, August 7, 2006, the Town, as well as the undersigned counsel, apologizes for the inability to comply with the Court's Orders. The Town nevertheless respectfully submits that the efforts made to comply with same, as outlined herein and in the attached affidavits, do not support a finding that the Town willfully or intentionally violated the Court's Order and thus, the Town requests that this Court find that there is no basis to find the Town in contempt of Court.

Defendants,
By their Attorney,

/s/ Marc DeSisto

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that this document has been filed electronically on August 25, 2006, and is available for viewing and downloading from the ECF system.

Jeffrey D. Sowa, Esq. (#5764)
67 Cedar Street, Suite 102
Providence, RI 02903

/s/ Marc DeSisto

Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Stephen F. Chrabaszcz, Jr., et al

v. C.A. No. 03-133 S

Johnston School Committee, both
Individually and as Committee Members, et al.

**AFFIDAVIT**

I, Marc DeSisto, on oath do depose and say:

1. I am the attorney of record representing all of the named defendants in the above captioned matter.

2. On May 18, 2006, after the Court had dismissed the matter for all of the defendants except the Town of Johnston and Michael Jolin, a jury returned a verdict in favor of the plaintiffs on the three (3) remaining counts.

3. On July 12, 2006 the Court heard arguments on the defendants' Renewed Motion for Judgment, Motion for a New Trial and Motion to Alter or Amend the judgment as well as the plaintiffs' Motion for Attorneys' fees, Motion to Modify and Motion for Costs.

4. During that hearing, the Court made inquiries regarding mediation as a possible settlement vehicle.

5. On July 13, 2006, I spoke by telephone and forwarded a letter to Assistant Solicitor Denise Myers relaying the Court's comments regarding settlement.

6. On July 18, 2006, I received an Order from the Court scheduling a settlement conference for August 1, 2006.

7. I sent the scheduling order on that same day (by fax) to Assistant Solicitor Denise Myers.

8. Upon information and belief, on that same day (July 18, 2006), Assistant Solicitor Myers discussed with the current School Superintendent (via email) and with the School Committee (in executive session), the mediation session and who would appear for the Committee at the session. During the meeting with the School Committee, Assistant Solicitor Myers addressed the School Committee regarding settlement authority and the settlement conference as yet not scheduled.

9. Upon information and belief, a number of the School Committee members sought to attend the settlement conference. However, various personal reasons prohibited all but the School Committee Chair from attending. Assistant Solicitor Myers informed me that the School Committee Chair would attend along with Ms. Myers for the August 1, 2006 mediation session.

10. Unfortunately on August 1, 2006, Ms. Myers reported to the Court that the School Committee Chair was unable to attend. Nevertheless, Ms. Myers attended the mediation session on behalf of the School Committee.

11. Paul Dutra, Senior Claims Representative for the RI Interlocal Trust also accompanied me to this mediation session

12. The mediation session lasted until at least 4:30 P.M. The Court indicated that it would schedule another mediation session in one week requiring the Town Council or a designated subgroup with full authority to attend the conference.

13. Consequently, on August 2, 2006, in mid-morning, I contacted Assistant Solicitor Myers to discuss the Court's intent to schedule a second mediation session with the attendance of

the Town Council. I also called Solicitor Lou DeSimone and left him a voicemail message in this regard.

14. On August 3, 2006, I sent a letter (by fax) to Assistant Solicitor Myers enclosing a copy of the Order scheduling the continued hearing for August 8, 2006. In that letter I asked if we could meet with the Town Council in executive session on Monday, August 7, 2006.

15. Upon information and belief, Assistant Solicitor Myers forwarded my correspondence to Solicitor DeSimone and the Johnston Town Hall. I subsequently learned that Solicitor DeSimone was unfortunately out of the office that day and did not receive the Order or the voicemail messages until the end of the day. However, upon information and belief, Assistant Solicitor Myers attempted to facilitate an emergency meeting with the Town Council through the Town Clerk, Robin Pimental.

14. On that same day (August 3, 2006), Town Council President Robert Russo attempted to contact me on another case and left me a voicemail message. I, in turn, called him back on that same day but we did not communicate with each other.

15. On the next day, Friday, August 4, 2006, I again called Town Council President Mr. Russo and left a voicemail for him to contact me. He called me back but I was out and so he again left me a voicemail message. I also left another voicemail message for Solicitor Lou DeSimone regarding the upcoming hearing on Tuesday and the Court's requirement regarding Town Council attendance.

16. On Monday, August 7, 2006, I finally spoke with Town Council President Robert Russo by telephone at which time he indicated that he was leaving for Belgium early the following morning. I then contacted Assistant Solicitor Myers and Solicitor DeSimone.

17. Solicitor DeSimone related to me that he was unable to schedule an executive session for the Council to discuss this matter and had been unable to make contact with the Council members.

18. Assistant Solicitor Myers gave me the names and telephone numbers of the remaining Town Council members. I attempted to call the remaining four (4) members leaving a message for each to contact me regarding the mediation session on Tuesday, August 8, 2006.

19. Council member, Ernest F. Pitochelli, called me back on that same day and indicated that he was not aware of the mediation session for the next day but would make every attempt to appear at Court. However, he also indicated that he did not have any settlement authority on behalf of the Town Council.

20. In light of this, on that same day, August 7, 2006, I wrote to Judge Smith to advise him of the difficulties regarding the next day's mediation session.

Marc DeSisto, Esq. (#2757)

Subscribed and sworn before me at Providence County this 25th day of August, 2006

Notary Public
Comm. Exp. 5/3/09

Exhibit B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Stephen F. Chrabaszcz, Jr., et al

v.

C.A. No. 03-133 S

Johnston School Committee, both
Individually and as Committee Members, et al

**AFFIDAVIT**

I, Louis A. DeSimone, being duly sworn, hereby state and aver as follows:

1. I am the town solicitor for the town of Johnston and as such have personal knowledge of the facts and circumstances set forth herein.

2. On Thursday, August 3, 2006 I received messages from both attorney Myers and attorney DeSisto regarding the order entered by this Honorable Court in the above captioned matter. While I was out of the office on that date, I received my messages at the end of the day.

3. On Friday, August 4, 2006, I attempted to contact the President of the Johnston Town Council in order to determine the feasibility of a meeting of the council for August 7th or 8th. While I was unable to contact the council president, I discussed the matter of a meeting with the town clerk and was advised that the president was scheduled to be out of the country on August 8, 2006.

4. On August 7, 2006, I advised attorney DeSisto of the situation and the inability of the town council to act in any official capacity to consider settlement of the within matter.

5. Upon information and belief, attorney DeSisto contacted the court to fully inform the court of the situation.

Affiant,

Louis A. DeSimone

Subscribed to and sworn before me this 24th day of August, 2006.

Notary Public Joseph J. Solomon
my comm exp 7/31/09