UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STEPHEN F. CHRABASZCZ, JR., et al. | : | |
| | : | |
| v. | : | C.A. No. 03-133S |
| | : | |
| JOHNSTON SCHOOL COMMITTEE, et al. | : | |
| | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

The above-entitled matter was tried to a jury before District Judge William E. Smith in May 2006. The jury reached a verdict in favor of Plaintiffs on the pending claims. On May 22, 2006, judgment entered in favor of Plaintiffs and against the Town of Johnston (the "Town") and former Johnston School Superintendent Michael Jolin in the total amount of $161,563.00. (Document No. 75). Judgment entered against Plaintiff and in favor of the Town's School Committee and its individual members based on a pre-verdict legal ruling made by Judge Smith. Id. Various post-trial motions are currently pending before Judge Smith.

On August 10, 2006, Judge Smith issued an Order finding that the Town failed to comply with two of his prior Orders regarding settlement conferences. On July 17, 2006, an Order issued requiring counsel "to appear with their respective parties or someone with full financial and other authority to conduct good faith negotiations" at 2:00 p.m. on August 1, 2006. That Order warned that "[f]ailure to so appear, without advance leave of Court, may result in sanctions." Judge Smith found that, on August 1, 2006, no one with full financial authority appeared for the Town, which acts through its Town Council.

On August 2, 2006, Judge Smith issued another Order requiring counsel "to appear with their respective parties or someone with full financial and other authority to conduct good faith negotiations" at 2:00 p.m. on August 8, 2006. This Order specifically required the Town Council (or a designated subgroup with full authority) to attend the conference. This Order also contained the same warning of sanctions.

During a telephone conference with the parties on the morning of August 8, 2006, Judge Smith was informed by counsel that in spite of his efforts to communicate the Court's August 2, 2006 Order to the Town Solicitor and Town Council members, the Town would not have a representative or representatives with full authority present at the conference scheduled for that afternoon, as required by the August 2, 2006 Order. Because of the Town's failure to comply with the August 2, 2006 Order and to conserve the resources of both the Court and the parties, the August 8, 2006 afternoon conference was cancelled by Judge Smith.

On August 9, 2006, the Town of Johnston was ORDERED by Judge Smith to SHOW CAUSE why it should not be held in contempt and sanctioned for violating his Orders dated July 17, 2006 and August 2, 2006. Judge Smith also referred the matter to this Court for a prompt hearing and recommended disposition pursuant to 28 U.S.C. § 636(b)(1).

On August 10, 2006, this Court issued an Order requiring the Town to file a written response to Judge Smith's Order to Show Cause and scheduling a hearing. The Town submitted a written response accompanied by affidavits of its counsel and Town Solicitor. A hearing was held before this Court on September 6, 2006. The Town was represented at the hearing by counsel and by an Assistant Town Solicitor. The Town's Finance Director and a Town Councilperson were also in attendance. Other than argument from counsel, the Town offered no other evidence at the hearing.

**Discussion**

A.     **The Court's Authority**

On July 17, 2006, Judge Smith scheduled a settlement conference for August 1, 2006 and ordered counsel "to appear with their respective parties <u>or</u> someone with full financial and other authority to conduct good faith negotiations." (Document No. 94). (emphasis added). Attorney Denise Myers, an Assistant Town Solicitor for the Town's School Committee (the "Committee"), appeared on the Committee's behalf. Judge Smith has found that "no one with full financial authority appeared [at the August 1, 2006 conference] for the Town..., which acts through its Town Council." (Document No. 97). Needless to say, the August 1, 2006 conference was not productive.

As a result, Judge Smith issued a second Order on August 2, 2006 scheduling another settlement conference and ordered that "the Town Council is required to attend the conference, unless full authority is delegated to a subgroup, in which case the subgroup only is required to attend." (Document No. 96). This second August 8, 2006 conference was cancelled after Judge Smith was advised on the morning of August 8, 2006 that neither the Town Council, a subgroup or single Town Council member would be present at the conference.

As an initial matter, the Town "respectfully" questions Judge Smith's authority to require the Town Council or an authorized subgroup to attend the conference. The Town relies primarily on the dissent of Circuit Judge Easterbook in <u>G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.</u>, 871 F.2d 648, 663-665 (7th Cir. 1989). The Town also notes that "there is <u>no</u> direct authority in the Federal Rules of Civil Procedure in any event to order the attendance of parties at settlement conferences." Town's Mem. in Response, p. 7. The Town's legal position is incorrect.

First, Rule 16(c) of the Federal Rules of Civil Procedure provides that "[i]f appropriate, the court may require that <u>a party</u> or its representative <u>be present</u>...in order to consider possible settlement of the dispute." (emphasis added).  Second, this Court is not in the Seventh Circuit and, even if it was, it would not be bound by a dissenting opinion.  In addition, Judge Easterbrook's dissent was authored in 1989 while the language from Rule 16(c) quoted above was enacted as part of a later 1993 amendment expanding the scope of authority under Rule 16.  Finally, the ADR Plan in this District (amended March 1, 2006) adopted by the District Judges pursuant to the Alternative Dispute Resolution Act of 1998, 28 U.S.C. § 651, <u>et seq.</u>, provides that "[u]nless expressly excused by the judicial officer..., <u>all parties</u>, counsel of record, and corporate representatives...having full settlement authority as defined in Section IV, <u>shall attend all ADR conferences</u>" and "[f]ailure to meet obligations under these rules may lead to disciplinary action." (emphasis added).  Thus, it is beyond dispute that Judge Smith had the authority to order the attendance of the Town Council or an authorized subgroup at a settlement conference.[1]

### B.     The Town's Compliance

The Town contends that its inability to comply with Judge Smith's Orders was not willful or intentional and thus does not amount to contemptuous conduct.  Although the Town admitted in hindsight to certain mistakes or negligence in responding to Judge Smith's orders, it argues that reasonable efforts at compliance were made.  When considering the issue of contempt, the Court "must make a four-part inquiry: (1) whether the alleged contemnor had notice of the order; (2) whether the order was 'clear and unambiguous'; (3) whether the 'alleged contemnor had the ability

---

[1] The Town has a mayor/council form of government and, pursuant to its Charter, the Town's Council is its policy determining body.  Johnston Town Charter § 3-8.  At the hearing, it was represented that Town Council action would be necessary to settle this action since the Town is ultimately the responsible party and has "final authority" over such matters.

to comply' with the order; and (4) whether the alleged contemnor violated the order." Carlow v. Mruk, C.A. No. 02-538ML , 2006 WL 858080, *1 (D.R.I. March 23, 2006) (quoting United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005)).  In other words, "[f]or a party to be held in contempt, it must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion."  Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 17 (1st Cir. 1991).  Finally, "any ambiguities or uncertainties in such a court order must be read in a light most favorable to the person charged with contempt." Id. at 16.

The Town also argues that a finding of willfulness is required citing United States v. Michaud, 928 F.2d 13, 15 (1st Cir. 1991).  The Town is correct if this is a criminal as opposed to a civil contempt proceeding.  The primary purpose of criminal contempt is "to punish disobedience with a judicial order and thus vindicates the authority of the court."  United States v. Marquardo, 149 F.3d 36, 39 (1st Cir. 1998) (citing G.&C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 40 (1st Cir. 1980) (emphasis in original).  On the other hand, the primary purpose of civil contempt is "to coerce compliance with an order of the Court."  Id.  (emphasis in original).  Civil contempt may also be used "to compensate a party harmed by non-compliance." United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005).  "Where, however, a judgment of contempt contains an admixture of criminal and civil elements, 'the criminal aspect of the order fixes its character for purposes of procedure on review.'" Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir. 1983) (quoting Penfield Co. of California v. S.E.C., 330 U.S. 585, 591 (1947)).

In order to recommend a criminal contempt finding, this Court would have to conclude that the Town acted willfully in violating Judge Smith's Orders.  The element of willfulness requires

evidence of "the knowledge that one is violating a court order." Marquardo, 149 F.3d at 43 n.4. In this case, the subject of the contempt proceeding is the Town and thus the issue is whether the Town willfully violated Judge Smith's Orders.

Since hindsight is 20/20, it is easy to see what went wrong in this process. The wrong entity was consulted regarding Judge Smith's July 17, 2006 Order. The Town's counsel communicated Judge Smith's July 17, 2006 Order to Assistant Town Solicitor Denise Myers who works on School Committee matters. Aff. of DeSisto, ¶¶ 5, 7. He represents that Ms. Myers communicated with the current School Superintendent (via email) and with the School Committee (in executive session) regarding Judge Smith's Order. Id., ¶ 8. Ms. Myers attended the August 1, 2006 settlement conference on behalf of the School Committee. Id., ¶ 10. None of the School Committee Members were available to attend. Id., ¶¶ 9-10.

It does not appear that the Town Council or the Mayor were contacted regarding the August 1, 2006 conference.[2] This is the primary cause of the Town's noncompliance. This Court sees no sense in contacting the School Committee to participate in a settlement conference in a case where the School Committee was no longer a party. The jury's verdict was entered solely against the Town and Mr. Jolin in the amount of $161,563.00 plus a currently disputed award of "100% atty. fees." (Document No. 73). In view of the verdict and subsequent judgment imposing substantial liability on the Town, it seems apparent that the entity responsible for making financial and policy decisions for the Town should have been contacted. At the hearing, it was represented that the

---

[2] The municipal calendar located on the Town's website (www.johnston-ri.us) indicates that the Town Council conducted its regular monthly meetings on July 10, 2006 and on August 15, 2006. Judge Smith's Orders and the scheduled conferences were sandwiched by these council meetings. The Town did not dispute, however, that it would have been possible, although difficult, to conduct an emergency session of the Town Council between these two regularly scheduled meetings to discuss Judge Smith's Orders.

proper entity was the Town Council. Judge Smith fully appreciated this point at the time, which is why he promptly amended his standard Order to specifically require the Town Council's attendance. See Document No. 96.

Moreover, the tumultuous history between the Town and the School Committee makes the failure to immediately involve the Town Council even more inexplicable. Justice Francis X. Flaherty, writing for the Rhode Island Supreme Court, noted in March 2006 that "a hostile and fractious relationship between town hall and the school committee in the Town of Johnston has lead to repeated clashes in the courtroom" regarding "money and budgetary control." Town of Johnston v. Santilli, 892 A.2d 123, 125 (R.I. 2006) (holding that the Town Charter prohibits the School Committee from retaining independent legal counsel unless the town solicitor is unable to represent it due to ethical considerations). See also School Committee of the Town of Johnston v. Santilli, No. C.A. 04-6801, 2005 WL 1023070 (R.I. Super. April 27, 2005) (ordering Town to provide an additional appropriation of $2,346.061.00 to School Committee under the Caruolo Act). Given this history, it hardly seems reasonable to expect that the School Committee would expend resources from its budget to settle a matter it is not a party to which involves liability against the Town, or that the School Committee would even have surplus resources available to do so.

In its Memorandum, the Town argues that the "biggest hurdle" in the Town's compliance with the August 2, 2006 Order was the "short time frame afforded to the Town to comply." Document No. 99 at p. 8. There are two flaws in this argument. First, the applicable time frame is not the period between the August 2, 2006 Order and the scheduled conference date of August 8, 2006. This matter started with Judge Smith's July 17, 2006 Order, and the Town had still not gotten its act together by August 8, 2006. This total three-week time frame was more than sufficient notice.

Second, Judge Smith notified the parties attending the August 1, 2006 conference of his intent to compel the Town Council's attendance at a conference the following week. The Town's counsel conceded in the Town's Memorandum that the "short time frame" was not objected to nor were any reservations expressed at the time. See Document No. 99 at pp. 8-9 n.1.

The bottom line is that this sequence turned out to be a comedy of errors which wasted the time of the Court and the litigants. However, while hindsight has revealed numerous mistakes, or negligence as argued by the Town, there is no evidence before this Court to suggest that the Town's noncompliance was willful or intended as an affront to the Court. Thus, this Court does not see a sufficient basis to warrant a finding of criminal contempt.

However, a finding of willfulness is not required to impose a civil contempt finding. See Carlow, 2006 WL 858080, *1. Civil contempt can be used to compel obedience to a court order or to compensate a contemnor's adversary for injury resulting from the noncompliance. Falstaff Brewing Corp., 702 F.2d at 778. This Court concludes that a finding of civil contempt is warranted, based on the Town's noncompliance, and necessary to compel future compliance and compensate Plaintiffs.

Accordingly, this Court recommends that the District Court issue an Order holding the Town in civil contempt for its noncompliance with its Orders of July 17, 2006 and August 2, 2006, and requiring the Town to compensate Plaintiffs for any verifiable expenses reasonably incurred in attending the August 1, 2006 conference and Plaintiffs' counsel for their reasonable time spent in preparing for and attending the August 1, 2006 conference. Further, this Court recommends that the District Court reissue its August 2, 2006 Settlement Conference Order for a date certain in the future. If the Town again fails to comply despite knowledge of the Court's August 9, 2006 Order

to Show Cause and this Report and Recommendation, there will be, in this Court's opinion, a clear basis for a finding of willfulness and the potential for a criminal contempt finding. Finally, this Court recommends that the District Court order the Town's counsel to serve a copy of the August 9, 2006 Order to Show Cause, this Report and Recommendation and any future related order(s) on the Mayor, Town Solicitor and individual Town Council Members, and to certify proof of such service to the Court.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); L.R. CV 72(d). Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1990).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 27, 2006