**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Stephen F. Chrabaszcz, Jr., et al

v. C.A. No. 03-133 S

Johnston School Committee, both
Individually and as Committee Members, et al.

DEFENDANT, TOWN OF JOHNSTON'S OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION

NOW COMES the Defendant, the Town of Johnston, and, in accordance with Fed. R. Civ. P. 72(b) and L.R. CV 72 (d), hereby objects to the Report and Recommendation of the Magistrate, dated September 27, 2006, (*Document 100)*, which recommends that the Town be held in civil contempt. In support thereof, defendant relies upon the specific objections contained in the attached Memorandum of Law, which defendant incorporates herein.

Defendant,
By its Attorney,

/s/ Marc DeSisto

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that this document has been filed electronically on October 9, 2006, and is available for viewing and downloading from the ECF system.

Jeffrey D. Sowa, Esq. (#5764)
67 Cedar Street, Suite 102
Providence, RI 02903

/s/ Marc DeSisto

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Stephen F. Chrabaszcz, Jr., et al

v. C.A. No. 03-133 S

Johnston School Committee, both
Individually and as Committee Members, et al.

DEFENDANT, TOWN OF JOHNSTON'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION

## I. INTRODUCTION

The Magistrates' Report and Recommendation essentially concludes that the Town should be held in civil contempt because the Town attorneys erroneously consulted with the School Committee rather than the Town Council in preparation for the August 1, 2006, settlement conference. *Report and Recommendation, Document 100 (September 27, 2006), at 6.* While defendant acknowledges that, in retrospect, mistakes were made, defendant submits that these mistakes do not support a finding that the Town acted in contempt of Court. In addition, as more fully outlined below, defendant further submits that the Magistrate erred in applying the civil contempt standard *sua sponte* and failed to consider the reasonableness of the Town's actions. The Town also objects based on the Magistrate's award of attorneys' fees without consideration of the Town's "willfulness". Thus, for the reasons outlined below, the Town objects to the Magistrate's Report and Recommendation.

## II. THE CONDUCT SIMPLY DOES NOT JUSTIFY A CONTEMPT FINDING

Before addressing the legal deficiencies that form part of the Town's objections to the Magistrate's Report and Recommendation, the Town first specifically objects to the

recommendation that the Town's conduct justifies the drastic conclusion that they are in contempt of Court. The Magistrate concluded that it was a "comedy of errors" by the attorneys that led to the non-compliance by the Town. While the Magistrate is correct in his assertion that "hindsight is 20/20", the errors identified by the Magistrate were not as obvious as suggested by the Court without the benefit of such 20/20 hindsight. In particular, the Magistrate states that it saw "no sense in contacting the School Committee to participate in a settlement conference in a case where the School Committee was no longer a party." *Id. at 6*. However, as this Court is well aware, although the Town, as a legal entity, was technically the named party to the suit, the School Committee was the real party in interest. It was the School Committee that hired plaintiff, the School Committee that was the signatory to the contract plaintiff claimed to have been breached, and it was the School Committee, through the School Superintendent, that was alleged to have actually breached the contract. Moreover, even though the School Committee decided it did not have any money in its budget to contribute to a settlement, in light of their intimate involvement and the implications a settlement would have on their actions, it was proper to consult the School Committee to gauge their settlement posture in light of the legal and practical issues involved.

The Magistrate did not recognize the fact that the Town Council had ABSOLUTELY NO involvement in this litigation, at any point including the discovery phase or trial.[1] While it is recognized that they ultimately hold the purse strings for the Town's budget and they are the group to ultimately make decisions on the part of the

---

[1] When this case was first filed, the majority of claims were covered by the R.I. Interlocal Trust's contract with the Town. It was only after the entry of partial summary judgment and the subsequent trial that the majority of the claims were dismissed leaving only the defamation claim and the uncovered breach of contract allegation remaining. Thus, an adjuster with the Interlocal Trust was present, with authority to settle, at all the pre-trial as well as the post-trial settlement conference currently at issue.

Town, it is not "inexplicable" that the School Committee, the group accused of wrongdoing would be the group to decide if settlement is in its best interest. In fact, although the Magistrate cites to the tumultuous history between the School Committee and Town Council to support the criticism for failing to involve the Town Council from the beginning of the settlement discussions, quite simply the opposite conclusion could also be drawn from this tumultuous relationship.

It is also submitted that in light of the Magistrate's recognition that the Town Council was not aware of the August 1, 2006, conference, it is a harsh remedy to conclude that the Town should be held in contempt for the Council's failure to appear.[2] While the undersigned recognizes that it is serving as the representative of the Town, it is a harsh remedy to conclude that a claimed "comedy of errors" by the attorneys and solicitors in failing to notify the appropriate group within the Town, should result in a finding that the Town itself is in contempt. The Town thus respectfully objects to the conclusion that the events in this case leading to the Court's Show Cause Order justify a finding of Contempt against the Town of Johnston.

## III. THERE IS NO LEGAL BASIS TO SUPPORT HOLDING THE TOWN IN CIVIL CONTEMPT

The Town also submits that the Magistrate nevertheless applied the wrong standard in recommending that the Town be held in contempt. In particular, the Magistrate concluded that although the Town's actions would not support a finding of "willful" violation of the Court Order, the Town could be held in "civil contempt" in order "to compel future compliance and compensate plaintiffs." *Report and Recommendation, at 8.* The defendant submits that there are several errors with this

[2] In fact, as recognized by this Court, the Town was represented by the Assistant Town Solicitor during the August 1, 2006, settlement conference.

conclusion. First, the Court lacks authority to initiate civil contempt proceedings. Second, even if this was properly before the Court as a civil contempt proceeding, the Town's technical and inadvertent violation does not justify a finding of contempt. Finally, in order to award attorneys' fees as a sanction to civil contempt, the Court nevertheless needed to find that the Town acted "willfully."

### A. Court Lacks Authority To *Sua Sponte* Issue Civil Contempt Proceedings

The Town submits in the first instance that the Magistrate erred in its conclusion that this Court's Show Cause Order contemplated a civil contempt proceeding against the Town and thus recommended that the Town be held in civil contempt. This is because a civil contempt proceeding is between the parties to the litigation and thus cannot *sua sponte* be raised by the Court.

Analysis of this position must begin with the recognition that "[b]roadly speaking, a civil contempt is a failure of a litigant to do something ordered to be done by a court in a civil action *for the benefit of the opposing party therein*." *Palmigiano v. Garrahy, 448 F. Supp. 659, 670 (D.R.I. 1978) (emphasis added).* Civil contempt thus has been used:

> to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the Court has found them to be entitled. . . [they] are civil, remedial, and coercive in their nature, and the parties chiefly interested in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce . . .

*In re Nevitt, 117 F. 448, 458 (8th Cir. 1902) (emphasis added); cf. United States v. United Mine Workers, 330 U.S. 258, 303-04 (1946).* The First Circuit has likewise recognized that "[p]roceedings in civil contempt are between the original parties and are instituted and tried as a part of the main cause. Though such proceedings are 'nominally

those of contempt', the real purpose of the court order is purely remedial -- to coerce obedience to a decree passed in complainant's favor, or to compensate complainant for loss caused by respondent's disobedience of such a decree." *Parker v. United States, 153 F.2d 66, 70 (1st Cir. 1946).* Thus, this Court has specifically held that "the purpose of the court order sought [in a civil contempt proceeding] is wholly remedial serving only the interests of the complainant." *United States v. Automatic Fire Alarm Co., 1968 U.S. Dist. LEXIS 12144, N. 5 (D.R.I. 1968) (emphasis added) citing Parker, 153 F.2d at 70.* With this purpose in mind, "[i]n the civil contempt setting, the court has no independent interest in vindicating its authority should its orders be violated." *Washington Metropolitan Area Transit Authority v. Amalgamated Transit Union, etc., 531 F.2d 617, 622 (D.C. Cir. 1976).*

Accordingly, the First Circuit has held that "[i]n light of the interests to be protected by this remedy, civil contempt proceedings may be instituted only by a party seeking to enforce the court's remedy." *Palmigiano v. Garrahy, 448 F. Supp. 659, 670 (D.R.I. 1978) citing MacNeil v. United States, 236 F.2d 149, 153 (1st Cir. 1956). Cf. Spangler v. Pasadena City Board of Education, 537 F.2d 1031, 1032 (9th Cir. 1976) (dissent) ("a district court is without authority to [institute civil contempt proceedings] sua sponte.").* In fact, "[a] fine imposed by the court in the absence of a motion by the party in interest would transmute the proceeding into a punitive one for criminal contempt." *Washington Metropolitan Area Transit Authority, 531 F.2d at 622.*

In the instant case, although this Court did not specify in its Show Cause Notice as to whether it was contemplating civil or criminal contempt, this Court cited criminal contempt cases as authority for the Court's issuance of its Order to Show Cause. *Show*

*Cause Order, Document 97 (August 10, 2006), at 3 citing In re Providence Journal Co., 820 F.2d 1342, 1344 (1st Cir. 1986)(appeal from criminal contempt conviction for violating temporary restraining order barring publication of information obtained by FBI in its the electronic surveillance of a prominent figure in organized crime); Fernos-Lopez v. United States Dist. Court, 599 F.2d 1087, 1089 (1st Cir. 1979) (appeal from conviction of criminal contempt for failure to obey the orders of a bankruptcy court judge).* This Court also directly cited 18 U.S.C. § 401, the criminal contempt statute, as its authority for ordering the Town to show cause. Moreover, in light of the principles cited *infra*, that a civil contempt may only be instituted by a party, it is clear that this Court could have only intended the parties to show cause as to why they should not be held in criminal as opposed to civil contempt.

This distinction is critical because, as recognized by the Magistrate, criminal contempt requires a showing of willfulness which implies a "deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." [3] *Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 782 (9th Cir. 1983).* In the instant case, the Magistrate specifically concluded that he could not recommend a finding of criminal contempt because there was no basis to suggest "that the Town's noncompliance was willful or intended as an affront to the Court." *Report and Recommendation, document 100 (September 27, 2006) at 8.* Accordingly, the Town submits that this Court should reject the Magistrate's Report and Recommendation because the Court does not possess the authority to institute civil contempt proceedings.

[3] In fact, the entire premise of the Town's Memorandum in Response to the Show Cause Order was position that the Town's actions were not "willful" and thus not contemptuous. Of course, one of the distinguishing characteristics of a criminal contempt is the need to find that a party acted willfully and deliberately. *United States v. Michaud, 928 F.2d 13, 15 (1st Cir. 1991).*

There being no basis to find that the Town acted "willfully", the Court should not find the Town in contempt.

### B. The Town Took Reasonable Steps To Comply With The Order And Thus The Technical And Inadvertent Violation Does Not Justify A Finding Of Contempt

The Town also objects to the Magistrate's Report and Recommendation because, even if this case was property before the Court on civil contempt, the Magistrate's Recommendation fails to give credence to the reasonable steps taken in the attempt to comply with the Settlement Conference Order.[4] It is well-settled that a "party against whom civil contempt sanctions are sought is not held to absolute compliance with the orders." *Morales Feliciano v. Rosello Gonzalez, 124 F. Supp. 2d 774, 786 (D.P.R. 2000).* "[I]f a violating party shows that it has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of contempt." *Id. quoting General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986).* Although there are different standards of reasonableness, it is generally agreed that contempt findings are in order if the Court concludes that the party "violated their obligations under the decree by failures of diligence, effective control, and steadfast purpose to effectuate the prescribed goals." *Palmigiano, 448 F. Supp. at 670* citations *omitted.*

While the undersigned has recognized the errors in this case leading to the noncompliance, it is submitted that their actions do not warrant a finding of lack of

[4] The Town also specifically objects to the Magistrate conclusion that the Town advised this Court on the morning of the August 8, 2006, of its inability to comply with the August 2, 2006, Settlement Conference Order. As recognized by this Court, counsel for the Town called and wrote to the Court on Monday, August 7, 2006, to advise it of the difficulties it was having in its attempt to comply with the Court's August 2, 2006, Order. *Show Cause Order, Document 97 (August 10, 2006), at 2.*

diligence or bad faith.[5] In addition to the Assistant Solicitor who had the authority, limited though it was, to settle on behalf of the Town, Paul Dutra, an adjuster with the R.I. Interlocal Trust was also present at the conference with settlement authority on the covered defamation claim. As more fully outlined in Defendant's *Memorandum of Law in Response to the Show Cause Order* and the affidavits submitted in support thereof, defendant submits that there was sufficient basis to find that the Town acted diligently and in good faith. *See Document 99.* Defendant thus respectfully objects to the Magistrate's Report and Recommendation and asks this Court to reject the Report and Recommendation and find that there is no basis to hold the Town in contempt.

**C. "Willfulness" Is Required In Order To Award Attorneys' Fees**

The Town also objects to the Magistrate's Report and Recommendation to the extent it recommends the award of attorneys' fees as a sanction without a finding of willfulness. The Town submits that even if this matter were properly before the Court on a civil contempt proceeding, the Court would still need to find that the Town acted willfully in order to award attorneys' fees. *Vuitton et Fils S. A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979) (appropriate "to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been wilful").*

Although the various Circuits that have addressed this issue have interpreted it differently, *compare Vuitton et Fils S. A., 592 F.2d at 130 to Perry v. O'Donnell, 759*

[5] "Good faith, while not in itself a defense in civil contempt proceedings, may be relevant to the question of defendants' ability to comply, and thus may be considered by a court in determining whether the defendants acted in contempt of the order." *Washington Metropolitan Area Transit Authority v. Transit Union, National Capital Division 689, 531 F.2d 617, 621 (D.C. Cir. 1976).*

*F.2d 702, 709 (9th Cir. 1985),* the First Circuit has not specifically addressed whether such willfulness is required in order to award attorneys fees in connection with a finding of civil contempt, *Dystar Corp. v. Canto, 1 F. Supp. 2d 48, 59 (D. Mass. 1997).* However, as recognized by the District Court of Massachusetts, the First Circuit may have indicated its endorsement of a requirement of willfulness in *Merriam Company v. Webster Dictionary Company, Inc., 639 F.2d 29, 41 (1st Cir. 1980).* In that case, while discussing the discretion afforded the District Court in awarding damages to compensate for past noncompliance with a court order, the First Circuit relied upon *Vuitton et Fils S. A., 592 F.2d at 130.* As noted, the Second Circuit in *Vuitton* held that, on remand, it was appropriate for the district court "to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful." *Vuitton, 592 F.2d at 130 (emphasis added).*

In another First Circuit case, *Engine Specialties, Inc. v. Bombardier Limited, 605 F.2d 1, 20 (1st Cir. 1979), cert. denied, 449 U.S. 890 (1980),* the First Circuit likewise intimated that willfulness was a prerequisite to award attorneys' fees in civil contempt proceedings when it upheld the District Court's award of attorney's fee incurred in prosecuting the contempt based on the lower court's finding of willful conduct. *Id. See also Princess House, Inc. v. Jewels by Park Lane, Inc., 1991 U.S. Dist. LEXIS 3300 (D. Mass. 1991) ("the willful nature of defendant's contemptuous violation of consent decree entitled plaintiff to reimbursement of attorneys' fees and costs expended in this enforcement action"); Inversiones Financieras C. Por A. v. Hitachi Sales Caribe, Inc., 337 F.Supp. 54, 57 (D.P.R. 1971) (finding that the defendants willfully disobeyed court*

*order and awarding plaintiffs' reasonable attorney's fees for the willful violation albeit no actual damages).*

Defendant submits that requiring a finding of willfulness in the award of attorneys' fees is logical in light of the Court's historical resistance to grant attorneys' fees as a matter of right. It is well-established that, under the American Rule, attorney's fees "are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefore." *Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717 (1967).* There are only three (3) exceptions to this rule endorsed by the Supreme Court. *Summit Valley Indus. v. United Bhd. of Carpenters & Joiners, 456 U.S. 717, 721 (U.S. 1982) (emphasis added).* One exception, according to the Supreme Court, is that attorneys' fees could be recovered for "*willful* disobedience of a court order." *Id. citing in part, Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399 (1923).* In light of these restrictions, the Town respectfully specifically objects to that portion of the Magistrate's Report and Recommendation recommending the award of attorneys' fees for time spent for and attending the August 1, 2006 settlement conference in the absence of a finding of willfulness by the Town.

Moreover, it is noteworthy that a fine in a civil contempt proceeding may not exceed complainant's actual loss[6] "plus complainant's reasonable expenses in the proceedings necessitated in presenting the contempt for the judgment of the court." *Parker v. United States, 153 F.2d 66, 70 (1st Cir. 1946).* Stated another way, this translates to the award of fees reasonably incurred in the prosecution of the civil contempt before the Court. In the instant case, the Town also specifically objects to the

[6] Although defendant objects to the conclusion that plaintiffs were actually damaged by their attendance at the August 1, 2006, settlement conference, defendant recognizes that this is an issue to be addressed upon plaintiffs' presentation of their "verifiable expenses."

Magistrate's recommendation of an award of attorneys' fees to the extent that it is not awarding fees for the "prosecution" of the civil contempt proceeding. In fact, the plaintiffs, although choosing to be present at the hearing before the Magistrate, had no involvement in the contempt proceeding and thus incurred no expenses for the prosecution of the contempt.

IV. **CONCLUSION**

For the reasons cited herein, defendant, Town of Johnston, objects to the Magistrate's Report and Recommendation (*Document 100*) and respectfully asks this Court to enter an Order finding that there is no basis to hold the Town of Johnston in contempt.

Defendant,
By its Attorney,

/s/ Marc DeSisto

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that this document has been filed electronically on October 9, 2006, and is available for viewing and downloading from the ECF system.

Jeffrey D. Sowa, Esq. (#5764)
67 Cedar Street, Suite 102
Providence, RI 02903

/s/ Marc DeSisto